DIVELY v. THE CITY OF CEDAR FALLS.

1. Municipal corporation: BRIDGES. The town of Cedar Falls, under its act of incorporation, had the power to contract for, and to issue warrants to provide for the payment of, the construction of a free bridge across the Cedar river, within the corporate limits and upon ground dedicated and set apart for a street, though the town was laid off on only one side of the river, but was approached from the other side by a road touching the river where the bridge was located.

2. —— CHARACTER OF SCRIP. The scrip issued by the corporation to provide for the payment of said bridge was not issued to circulate as money, and is not therefore void for that reason.

3. —— SCRIP USED AS A CIRCULATING MEDIUM. The fact that members of the council may have contemplated, at the time of voting the scrip, that it might or would become a convenient circulating medium, would not make it money, nor its issue violative of the law. Nor would the corporation be released from liability by the fact that the scrip was used by individuals, or the community generally, as a circulating medium.

4. —— OBJECT OF THE LAW. It was the object of the law to lay its hand upon *banking corporations* prohibited by the express language of the old Constitution, and it is not applicable to municipal corporations issuing its warrants or scrip in payment of its actual indebtedness.

5. Verdict: SPECIAL FINDINGS: NEW TRIAL. The failure of the jury to return a special verdict upon a particular question submitted to them constitutes no ground for a new trial; especially where the general verdict is warranted by the evidence.

6. Municipal corporation: SCRIP: FREE AND TOLL BRIDGE. Scrip issued by a municipal corporation for the erection of a free bridge would not be invalidated by the council subsequently declaring it a toll bridge. And the rule would be the same whether the scrip remained in the hands of the contractor or had been transferred to third parties.

7. —— LIMITATION OF CORPORATE INDEBTEDNESS: CONSTITUTIONAL LAW. If a municipal corporation has the means in its treasury to meet its indebtedness, the issue of warrants to an amount larger

than five per cent of its taxable property would not be a violation of section 3, article 11 of the new Constitution, which provides that no municipal corporation shall be allowed to become indebted to an amount exceeding five per cent of the taxable property within the corporation. In such case it would not become indebted within the meaning of the constitutional clause.

8. —— WHAT CONSTITUTES INDEBTEDNESS. So, too, an obligation arising under a contract on the part of a municipal corporation to pay for work, when, and as it shall be, performed in the future, does not constitute or ripen into an indebtedness within the meaning of the Constitution until the performance of the work.

*Appeal from Black Hawk District Court.*

FRIDAY, JUNE 11.

IN 1858 the defendant issued its scrip to aid in building a bridge to the amount of near $15,000, and plaintiff seeks to recover in this action upon twenty of these (of $5.00 each) with interest. There was a trial, general verdict for plaintiff, answers returned to certain specific interrogatories, judgment following the general verdict, and defendant appealed.

*Powers & Hemingway* and *B. W. Poor* for the appellant.

*Boies & Allen* for the appellee.

WRIGHT, J. — That the scrip was issued and had not been paid, are among the admitted or conceded facts.

1. MUNICIPAL CORPORATION: bridges. The bridge, to pay for the construction of which the scrip was issued, was built over the Cedar river, within the corporation limits of the town (now city). And while numberless points are made upon this appeal, they may all be disposed of by the consideration of the questions following:

1. Was this scrip issued to circulate as money?

2. Was it made to aid in the construction of a *toll bridge,* and was this bridge located upon a street of the

town, or at a point where the authorities had the right or power to erect the same?

3. Did the indebtedness thereby created exceed five per centum of the value of the taxable property within the corporation?

4. Did the authorities have power under the charter to build this bridge, if on a street, and without reference to the plan adopted for paying for the same?

And now, of these briefly, and generally, without undertaking to discuss them *seriatim*. In the discussion we find ourselves much assisted by what we have formerly ruled in relation to this same scrip and contract. Thus it was held expressly in *Mullarky* v. *The Town of Cedar Falls*, 19 Iowa, 21, that we did not feel at liberty to doubt the power to build the bridge in question, offering as it did a safe and easy transit to all parts of the town. If it is claimed that this conclusion was based upon the fact that the town was laid off on both sides of the Cedar river, a proposition now shown to be unfounded, we say, if this be the *claim*, then the answer is, that it was erected within the corporate limits, and, as the jury could and did properly find, upon ground dedicated and set apart for a street and used as such. There was also testimony tending to show that a road had been laid out on the north side of the river (the town was not then plotted on that side), extending to and touching the river where the bridge was located. And adding that the right of the public to approach the bridge from either side by these streets and roads, whether laid out or dedicated, was never questioned so long as the structure continued, which was for years, we conclude, that the power to build and at the place selected, cannot, in this case and in this pro-

2. —— character of scrip. ceeding, be regarded doubtful. So, too, it was said in the case above cited, that it was not our opinion that these notes were issued to circulate as

money. But the question was held to be immaterial, and it was therefore passed without discussion. The present case was before us in 1866 (21 Iowa, 565) and reversed in part, because of the refusal of the court below to allow defendant to inquire whether "said scrip was issued to be used and circulated as money." Its invalidity, and the non-liability of the city if thus issued, are propositions admitted under our law. Code of 1851, §§ 2731, 2734; *Reynolds* v. *Nichols*, 12 Iowa, 398. And hence the inquiry was fully made on the second trial and this one now before us. The jury found specially that this scrip was not issued to circulate as money. And in view of the purpose and meaning of the law and the facts of the case, this conclusion was right.

We have said the law is not controverted, and hence it is conceded that this scrip would be void if issued to circulate as money. The court plainly and in unequivocal terms so instructed the jury at defendant's instance. The jury found the fact for plaintiff, however, and, as we have said, we think correctly. Certain it is that the finding was not so far against evidence as to warrant. our interference.

The resolution authorizing its issue contains no intimation that it is to be thus used. It was issued to pay for this bridge, and was actually so used. The purpose was hence legitimate.

That members of the city council may have contemplated, at the time of voting, that it might or would become a convenient circulating medium, would not make it money, nor its issue a violation of the law, nor would the city be released from liability by the fact that this scrip was used by individuals or the community generally as a circulating medium. The law was never intended to reach or cover any such case. For, under such a rule, the war-

3. —— scrip used as a circulating medium.

Dively v. The City of Cedar Falls.

rants of any and every city and county in the State, almost, in times of financial pressure, or during what are known as "money panics," would be alike illegal and void.

The law intended to lay its hand on *banking corporations*, prohibited as they were by the express language of the Constitutition (old Constitution, art. 8). And we can scarcely conceive how a state of case could arise where it would be applicable to a municipal corporation issuing its warrants or scrip in payment of its actual indebtedness.

4. —— object of the law.

The defendant, however, had full opportunity to make such a case, entirely failed, as the jury found, and this finding is approved. Prior to the resolution or action of the council providing for the issue of this scrip and the erection of this bridge, there had been a vote of the people in favor of the same, and it is doubtless true that this vote was regarded as the authority for such contract.

The defendant asked and the court instructed, that the council had no power to submit such a question, and that no authority could be derived from said vote. Accepting this as correct — and defendant does not now, and indeed could not well question it — we turn to the action of the council rather than the vote, to see what was done, and to ascertain whether the corporate agents did or did not exceed the power vested in them by the law.

We have already settled that there was power to build a bridge; a free, not a *toll* bridge. Neither in the resolution of the council, nor in the testimony as to the contract for building the bridge, is there a word said about its being other than free. A specific interrogatory was propounded to the jury on this subject, but to it they returned no answer.

5. VERDICT; special findings: new trial.

This failure would not justify a new trial, especially if the general verdict was warranted.

Nor would any subsequent action of the council declaring it a toll bridge, after the contract and after the 6. MUNICIPAL issuing of the scrip, invalidate it. This CORPORATION: scrip: free would be true, whether it remained in the and toll bridge. hands of the contractor or had been transferred to a third person. And looking to the action of the council, we find nothing to warrant the conviction that, upon this point, the verdict was against evidence. To this extent only need we go, and hence here leave this part of the case.

We then finally inquire, did the indebtedness created by the issue of the scrip exceed five per cent of the tax- 7. —— limita- able property, and was the debt therefore tion of corpo- rate indebted- void, being in violation of section 3, article ness: consti- tutional law. 11 new Constitution, which is, that no municipal corporation shall be allowed to become indebted in any manner to an amount exceeding five per centum on the value of the taxable property, within such corporation, to be ascertained by the last State and county tax lists.

Testimony was introduced to show the aggregate of the tax lists within the corporation for the years 1857 and 1858, and that five per centum of either would fall below the whole amount of scrip issued. But this conceded, the question actually arising is scarcely touched. There is no particle of testimony warranting the conclusion that when the *scrip now in suit was issued,* the town was "indebted in any manner" in another cent. Indeed we do not know but that there was money in the treasury to pay this $100, and more than this. If a municipal corporation has the money in its treasury to meet its indebtedness, the issue of warrants to the amount of $20,000, or any other sum, however great, over five

per cent of its taxable property, would not be a violation of the Constitution. In such a case it would not "become indebted" within the meaning of the clause under consideration.

It is insisted, however, that the *liability was created* when the contract was made; that the city *then* became indebted; that the amount thus agreed to be paid was more than five per centum, etc., and that, hence, there is no liability. And in this connection, we are referred to *Davenport G. L. & C. Co.* v. *City of Davenport* (13 Iowa, 229). What we decided there, however, was that the obligation to pay was created by the contract entered into *before* the adoption of the Constitution, and that the subsequent prohibition would not and could not interfere with *the rights of the parties* under such a contract. To this opinion we still adhere. But the *obligation* to pay, so far as the time of its inception as between the parties is concerned, is one thing, and an actual indebtedness within the meaning of the Constitution, quite another.

If A. should undertake to build a court-house, within three years, doing so much, and to be paid accordingly, each year, the obligation of the contract would arise when executed, but the *indebtedness* under the Constitution (if there was none other) would be measured by that to be paid each year. If this is not so, then it would be impossible in a majority of instances to even contract for the most necessary public buildings, without a prior levy and deposit of the funds in the public treasury. This the Constitution never intended. And while fully disposed to so construe this provision as to guard well the public against onerous and unjust taxation, we are not justified in so reading it as to stop every public improvement or municipal work.

In conclusion, we may remark that the case was put

*Note (margin): 8. —— what constitutes indebtedness.*

to the jury under instructions very full and fair. We have not undertaken to state even their substance, except briefly as bearing upon the questions discussed. Upon the whole, we believe the case is without error, and should be, as it is,

Affirmed.