### NESBIT *v.* INDEPENDENT SCHOOL-DIST. OF RIVERSIDE.

*(Circuit Court, N. D. Iowa, W. D.* October Term, 1885.)

1. SCHOOL-DISTRICT BONDS—CONSTITUTIONAL POWER TO ISSUE—PURCHASER—NOTICE.

   The purchase of school-district bonds charges the purchaser with knowledge of the financial condition of the district in so far as it affects the constitutional power of the district to issue the bonds.

2. SAME—ACTION UPON BOND AFTER SUCCESSFUL ACTION UPON COUPON—DEFENSE—ESTOPPEL.

   A decision adverse to the defendant in an action involving the validity of coupons of a bond does not necessarily estop the defendant from setting up the invalidity of the bond itself in a subsequent action upon it.

At Law.

*Powers & Lacy* and *E. M. Carr,* for plaintiff.

*S. M. Marsh, O. J. Taylor,* and *J. H. Swan,* for defendant.

SHIRAS, J. By consent of parties this cause was tried to the court, a jury being waived. From the evidence I find the following facts:

(1) The Independent School-district of Riverside was organized in October, 1872, the territory embraced therein having previously formed part of the district township of Rock.

(2) The value of the taxable property within the boundaries of the independent district, as shown by the state and county tax-lists, was, for the year 1872, $41,426, and for the year 1873, $68,307.

(3) That on the twenty-sixth and twenty-seventh days of March, 1873, the indebtedness of said independent district, exclusive of the bonds declared on in this action, exceeded the sum of $3,500.

(4) That the bonds sued on in this action, bear date March twenty-seventh, 1873; are five in number, for $500 each, or $2,500 in the aggregate, exclusive of interest; are numbered 14, 15, 16, 17, and 18; and that the signatures thereto are the genuine signatures of the officers of the district purporting to sign the same; and that the said bonds, with the accrued interest, now amount to the sum of $5,695.

(5) That the plaintiff, who is a citizen of Great Britain, bought these bonds, as an investment, from one Henry Hutchinson, on the twentieth day of December, 1877, paying him therefor the sum of $2,000; that said plaintiff, when she made such purchase, had no other knowledge concerning the bonds, or of the facts connected with their issuance, than she was chargeable with from the bonds themselves, and from the provisions of the constitution and laws of the state of Iowa.

(6) That said bonds were issued without consideration, and, as against the independent district, are invalid and void.

(7) That plaintiff brought suit in the United States circuit court at Des. Moines, Iowa, against the said independent district of Riverside, upon certain of the interest coupons belonging to bonds Nos. 14 and 15, being two of the bonds included in the present action; and, in the petition in that cause filed, the plaintiff averred that she was the owner of the two bonds, (Nos. 14 and 15,) and the coupons thereto attached, and asked judgment upon the six coupons then due and unpaid. To this petition the defendant answered that at the time the bonds were issued the indebtedness of the district exceeded 5 per cent. of the taxable property of the district, as shown by the state and county tax-lists, and that the bonds were therefore void under the provisions of the constitution of the state of Iowa; that no legal or proper election upon the question of issuing the bonds was held; that the bonds were issued under the pretense of building a school-house with the proceeds thereof, but that the same has not been built, nor was it intended that it should be built; that the district received no consideration for the bonds, and that the same are fraudulent and void; that plaintiff is not a *bona fide* holder of said bonds. The case was tried to the court, and judgment was rendered in favor of plaintiff for the full amount of the six coupons declared on in that cause. It is shown by evidence *aliunde* that the five bonds bought by plaintiff were in possession of plaintiff's counsel at the trial of the action at Des Moines, and that bonds Nos. 14 and 15 were actually produced and exhibited to the court at such trial. It is not shown that at such trial the fact that plaintiff had bought and was the owner of bonds Nos. 16, 17, and 18 was made known to the court. The judgment entry in said cause shows that on that trial it appeared from the evidence, that when said bonds (Nos. 14 and 15) were issued the indebtedness of the district, exclusive of these bonds, exceeded the constitutional limitation of 5 per cent; that the judges trying said cause were divided in opinion upon the question whether the recitals in the bonds estopped the defendant from showing this fact against plaintiff, and certified a division of opinion on this question, judgment being rendered in favor of plaintiff. It does not appear that the cause was taken to the supreme court upon the question certified.

(8) According to the provisions of the Code of Iowa in force when the bonds in suit were issued, the assessors charged with the duty of listing and valuing property, as the basis for the levy of the state and county taxes, were required to enter upon the discharge of this duty on the third Monday in January, in each year; and they were required to deliver one copy of the assessment made by them to the clerk of the township on or before the first Monday in April. This assessment book, or list, was for the use of the township trustees as a board of equalization for the township, who were required to meet for that purpose on the first Monday of April, and to continue in session from day to day until their work was completed. The assessment next came before the board of supervisors of the county, for equalization between the townships, at the regular meeting in July; and, for equalization between the counties, the assessment came before the executive council of the state on the second Monday of July, and this board was required to complete its equalization on or before the first Monday in August, and to forthwith transmit to the county auditors a statement of the percentage to be added to or deducted from the valuation of real property in each county, and the county auditors were required to make the proper addition or deductions from the valuation. Until these several steps were completed the total amount of taxable property for state and county purposes could not be legally known.

From the foregoing facts it follows that in determining the amount of indebtedness which the independent district could lawfully incur

on the twenty-seventh day of March, 1873, when the bonds in suit were issued, the calculation must be based upon the assessment for the year 1872, because, according to the provisions of the Code then in force, the assessment for 1873 could not be completed until after the first of August. The amount of taxable property within the district for the year 1872 was $41,426, and 5 per cent. upon this sum would be $2,071.30. When the plaintiff was about to purchase these bonds she was bound to know the limit of indebtedness which the constitution of Iowa imposed upon the district, and she was likewise bound to take notice of the amount of taxable property within the district, as shown by the state and county tax-lists. *Buchanan* v. *Litchfield*, 102 U. S. 278; *Dixon Co.* v. *Field*, 111 U. S. 83; S. C. 4 Sup. Ct. Rep. 315. In other words, she was bound to know, and must be held to have known, when these bonds were offered for sale to her, that in March, 1873, the limit of the indebtedness which the district could lawfully incur was $2,071.30. As the bonds, without interest, which she purchased amounted to $2,500, she was charged with notice of the fact that the constitutional limitation had been exceeded. Further inquiry would have disclosed the fact that before any of these bonds were issued the limit of lawful indebtedness had been passed, and that no part of the bonds offered for sale were legal and valid.

Under such a state of facts, it cannot be held that the plaintiff is an innocent purchaser, but, on the contrary, it appears that she bought the bonds under circumstances charging her with notice of the illegality thereof. On part of the plaintiff it is, however, contended that the defendant, by reason of the adjudication in the case brought upon the coupons attached to bonds 14 and 15, in the court at Des Moines, is now estopped from asserting that the bonds are illegal and void in the hands of plaintiff; and, upon the trial, all the evidence introduced by the defendant was objected to by the plaintiff for that reason. In support of this position counsel for plaintiff mainly rely upon the cases of *Aurora* v. *West*, 7 Wall. 82, and *Beloit* v. *Morgan*, Id. 619.

In the case of *Geneva Nat. Bank* v. *Independent School-Dist. of Riverside*, *ante* 629, just decided, I have considered these cases in the light of the opinion in the later case of *Cromwell* v. *Sac Co.*, 94 U. S. 357, reaching the conclusion that, if the cases are not conflicting, at least the general statements found in the former cases are greatly modified and restricted in the latter case. According to the doctrine laid down in *Cromwell* v. *Sac Co.*, the judgment in the prior case brought at Des Moines upon the coupons attached to bonds 14 and 15 is conclusive, so far as those coupons are concerned; and in a second suit between the same parties, upon other bonds or coupons belonging to the same series, is conclusive upon all issues which were in fact heard and determined in the former suit. In effect, what was determined in the former suit between the present parties was that plaintiff was an innocent holder for value of the coupons sued on,

and, as such, was entitled to recover, notwithstanding the fact that it appeared from the evidence that the indebtedness of the district exceeded the constitutional limit at the time the coupons sued on were issued. The question upon which the judges were divided in opinion was whether the recitals in the bonds were of such a character as that plaintiff had the right to rely thereon as evidence of the fact that the bonds were within the constitutional limit, and therefore valid. It is evident that the decision in that case turned upon the question whether plaintiff was or was not an innocent holder of the coupons sued on; the judgment deciding that she was. According to the ruling in *Cromwell* v. *Sac Co.*, this judgment does not estop the defendant from contesting the question whether the plaintiff is an innocent holder of the bonds involved in the present suit.

The present suit is not based upon the same coupons that were declared on in the former action; and in that proceeding the question whether plaintiff was or was not an innocent holder of bonds Nos. 14, 15, 16, 17, and 18 was not involved nor determined. This question is therefore open for determination in the present case.

The evidence now introduced shows that plaintiff, outside of the recitals of the bonds, was charged with knowledge of a state of facts which conclusively proved that the bonds exceeded the constitutional limit. No matter, therefore, how clear the recitals in the bonds might be, she could not rely thereon in making the purchase, because she knew, or was charged with knowledge, of such a state of facts as precluded the idea that the bonds were within the constitutional limit. In other words, she knew, or was bound to know, that in March, 1873, the independent district could not lawfully incur an indebtedness in excess of $2,071.30, and the bonds offered to her for purchase amounted to $2,500. This fact was sufficient to put her upon inquiry, and any reasonable inquiry would have disclosed the fact that the district was already indebted to an amount in excess of the legal limit, and that, consequently, the bonds were wholly void.

Counsel for plaintiff, in their argument upon the question of the amount of indebtedness due and owing by the district when the bonds in suit were issued, claim that there may have been money enough in the treasury of the district to pay off the existing indebtedness; and that therefore the actual indebtedness may have been within the constitutional limitation; and cite in support thereof the case of *Dively* v. *Cedar Falls*, 27 Iowa, 227, in which it was held, "that if a municipal corporation has the money in its treasury to meet its indebtedness, the issue of warrants to the amount of $20,000, or any other sum, however great, over five per cent. of its taxable property, would not be a violation of the constitution. In such a case it would not 'become indebted' within the meaning of the clause under consideration." It will be remembered that under the laws of Iowa warrants are the authority for the payment of money by the treasurer. The money may be in the treasury to meet a given debt, but the cred-

itors must procure a warrant therefor, before the treasurer is authorized to make the payment. Therefore the mere facts that certain warrants are drawn in favor of A., B. and C., on a given day, upon the treasurer of a city or county, does not necessarily imply that thereby the indebtedness of the corporation has been increased by the amount of the warrants.

Just as the supreme court of Iowa holds in *Dively* v. *Cedar Falls*, if the money is in the treasury to pay the warrants, the drawing of the warrants does not create a debt within the meaning of the constitutional limitation. If, however, bonds are executed payable 10 years after date, these are evidence of an actual indebtedness, not to be paid at once out of money now in the treasury, but to be paid when they mature in the future, and it is questionable whether the same rule is applicable thereto. Thus, if it appeared in a given case that the amount of indebtedness that the district could incur was $10,000, and there was $10,000 in the treasury liable to be used for current expenses, and the district should issue $20,000 in bonds payable in 10 years, it would certainly be a grave question whether such an issue would not exceed the limitation of the constitution. But however this may be, in the case now before the court the defendant put in evidence the secretary's and treasurer's books belonging to the district, which was the best evidence attainable, and from these it did not appear that there was on hand any sum of money applicable to the payment of the outstanding indebtedness.

From the entire evidence, the court is justified in finding that the actual indebtedness of the district when the bonds were issued exceeded the constitutional limit, and that they are therefore void. Judgment must therefore be entered for the defendant, and it is so ordered.