\* THE CITY OF GUTHRIE V. THE NEW VIENNA BANK.

1. REFEREE—*No Judicial Power.* Article 1, ch. 14, Statutes of Oklahoma, does not confer judicial power on the referees; does not impair the right of trial by jury; is not an attempt to regulate practice in courts of justice, and does not deprive persons of rights or property without due process of law.

2. MUNICIPAL CORPORATIONS—*Debt—Legislative Power to Compel Payment.* It is within the legislative power, unless prohibited by some superior rule or organic law, to compel a subordinate municipal corporation to pay for any property or services for which the public has received or may receive any advantage or profit, and may require a tax to be levied to pay any debt which has either a moral or meritorious basis.

---

\* NOTE—Decision handed down September 7, 1894; petition for rehearing filed, and petition denied, February 13, 1896. [Reporter.]

3. REVENUE—*Legislation.* The legislature is the sole judge of the expediency or wisdom of such legislation, and it may exercise such powers over the property and revenues of cities and counties as are not inconsistent with the purpose for which such revenues are raised.

4. REFEREE—*Report Proceedings—Trial.* The referees appointed under the provisions of said Statute, should report their proceedings to the district court, and said court may approve or disapprove their action, and each claim allowed or disallowed may be docketed and tried in the district court either to a jury or by the court as the parties may elect.

5. MUNICIPAL INDEBTEDNESS—*Limitation.* The legislature has no power to impose a liability upon a city which would be in excess of four per centum of the taxable property within said city, as shown by the last assessment for territorial and county taxes previous to imposing such obligation. Section 4, ch. 848, Statutes at Large. vol. 24, p, 171, imposes a limitation upon the power of municipal corporations in territories to become indebted in any manner or for any purpose in excess of four per centum of the taxable property within such corporation or taxing district, as shown by the last assessment for territorial and county purposes made previous to the incurring of such indebtedness, and said limitation applies to "imposed obligations" and statutory liabilities as well as those incurred by the action of the corporate authorities.

6. SAME—*Payment Cannot Be Required, When.* The legislature has no power to require a city to pay debts and liabilities which are in excess of the maximum limit fixed by the laws of the United States.

7. ASSESSMEMT—*No Provision for.* Neither the Organic Act creating the Territory of Oklahoma, nor the laws adopted from Nebraska by act of congress, made any provision for assessment of property for purposes of taxation and at the time ch. 14, Oklahoma Statutes, took effect, there was no law in the Territory authorizing an assessment which could be the basis of municipal corporations to incur indebtedness.

8. INDEBTEDNESS—*Basis for Incurring.* The laws of the Territory which went into effect Dec. 25, 1890, provided a system of assessment for purpose of raising revenue by taxation, and under such laws no assessment could become final and complete so as to form a basis for incurring indebtedness until the territorial board of equalization had made its returns to the several county clerks in 1891.

9. VOID INDEBTEDNESS. When there has been no assessment of property for purposes of taxation, there is no power to incur indebtedness. Two factors enter into the power of cities to become indebted, one the assessment of property for territorial and county taxes previously made, the other the aggregate amount of debts existing. If the first factor is absent, there is no authority to become indebted, and all debts incurred or imposed prior to such assessment are void.

10. VOID STATUTE—*Conflict.* Chapter 14, Statutes of Oklahoma, which attempt to impose the provisional debts of Guthrie, East Guthrie, Capitol Hill and West Guthrie upon the City of Guthrie is void for conflict with the pro-

visions of § 4, ch. 818, 24 U. S. Stat. at Large, which prohibits municipal corporations in territories from becoming indebted in excess of four per cent. on the assessed valuation of property for territorial and county taxes.

11. LEGISLATURE—*Limitation—Former Decision Overruled.* So much of *the Territory ex rel. Losey v. The City of Guthrie,* 1, Ok. 188, as holds that the U. S. Statute is not a limitation on the legislature, is overruled.

12. MUNICIPAL POWER—*Limit—Measure of.* The assessed valuation of taxable property is by the act of congress made the standard for measuring the limit of municipal power.

*Error from the District Court of Logan County.*

*B. T. Hainer,* for plaintiff in error.

*Harper S. Cunningham,* for defendant in error.

The opinion of the court was delivered by

BURFORD, J.: This case comes to us by petition in error from the district court of Logan county. [Hon. E. B. Green, Judge.]

The judge of the district court of Logan county, pursuant to the authority conferred by ch. 14, Statutes of Oklahoma, 1890, appointed three referees or commissioners, who qualified and proceeded to discharge the duties imposed by said act. In their report to the district court was included the claim of the defendant in error in this case. Objection was made by the city of Guthrie to the claim as allowed by the referees and the same was placed on the trial docket of the district court, and a trial had before the court. A finding was made in favor of the defendant in error and judgment rendered against the city, and an order entered directing the city to pay the same.

From this judgment the city prosecutes her petition in error and brings up the entire record, from the appointment of the referees to the rendition of final judgment.

A number of questions are presented and argued which this court settled in the case *Territory ex rel.*

*Losey v. The City of Guthrie*, 1 Ok. 188. In that case this court decided that it is within the legislative power, unless prohibited by some superior rule or organic law, to compel a city to pay for any property or services for which the public has received or may receive any advantage or profit, and may require a tax to be levied to pay any debt which has either a moral or meritorious basis.

"Of the expediency of the taxation or the wisdom of the appropriation, the legislature is the sole judge. The power which it may exercise over the revenues of the state, it may also exercise over the revenues of the city for any purpose connected with its present or past conditions, except as such revenues may by the law creating them be devoted to special uses, and in imposing a tax it may prescribe the municipal purpose to which the monies raised shall be applied. A city is only a political subdivision of the state made for convenient administration of the government. It is an instrumentality with powers more or less enlarged according to the requirements of the public, and which may be increased or repealed at the will of the legislature." (*New Orleans v. Clark*, 95 U. S. 644; *City of Guthrie v. Territory ex rel.* 1 Ok. 188.)

It is well settled that the legislature may compel municipal corporations to pay debts or claims not binding in law, and which cannot be enforced in equity, but which are nevertheless just and equitable and involve a moral obligation. (Dillon on Corporations, § 75.)

The legislature of Oklahoma having determined that it was proper for the city of Guthrie to pay these claims, it is not a question for the courts so long as the statute contravenes no higher law or limitation.

It is contended that the effect of the statute is to take property of persons who are now residents of the city to pay debts created before they became property owners.

There is no merit in this argument. If this could not be done, it would overthrow and defeat every statute having for its object the raising of revenue by taxation of property.

Municipal corporations are authorized to incur debts for divers purposes; to borrow monies and execute long time bonds; to enter into contracts running a number of years, and in various ways create liabilities which must be met by taxation for years in the future. For the benefits derived from public improvements, for the use of the public property, the public privileges, which are the fruits of the liabilities thus created, future property owners are compelled to contribute their *pro rata* assessments, and this general principle applies in all cases where funds are raised for public purposes by general taxation.

It is earnestly insisted by counsel for the city of Guthrie that the act in question is in conflict with the provisions of ch. 818, § 1, 24 Stat. Large. p. 170, in that it is a special statute regulating the practice in courts of justice.

The proposition is not well founded; § 1. art. 1, ch. 14, Oklahoma Statutes, 1890, authorizes the district judge of Logan county to appoint three referees to inquire into and pass upon all claims and demands issued by either of the city governments of Guthrie, East Guthrie, West Guthrie and Capitol Hill, for all purposes.

This section does not prescribe any practice for the court. The legislature had the power to require these debts to be paid and with this they had the authority to provide a means of determining the amount to be paid, and to whom the same should be paid, so long as they took away or abridged no substantial right. They could have conferred this power upon any officer they, in their wisdom, deemed expedient. The authority to appoint

referees, masters and commissioners has always belonged to the courts and judges, and this act conferred no new authority in general, but gave the right to make the appointment in this particular matter. Section 3 provides how the referees shall conduct their proceedings. The referees are not a court, or are they vested with any judicial powers, nor are their findings conclusive on any person. They simply report the result of their work to the district court for further action by the court.

Section 5 provides that the referees shall report to the district court all claims allowed and all claims disallowed for approval or disapproval by the district judge, and all claims so allowed by the court shall be certified to the mayor of the village of Guthrie, and the manner of payment is then prescribed by the statute.

This section does not attempt to define any matters of practice. It was the purpose of the legislature that after the referees had reported their action to the district court, that each claim allowed or disallowed by them should stand for approval by the court. The term district judge as used in this section is intended to mean the district court, and the final hearing and disposition of the several claims is intended to be before the court. In the hearing of said claims for approval or disapproval the usual practice in proceeding pending in the district court is to be followed.

Jurisdiction is obtained of the parties and the subject matter by filing of the report of the referees, and the court may adopt their report on all claims that are not objected to by either party, or require further proof thereof as may to the court seem proper, but each case should be separately docketed by the court, and the parties given an opportunity to be heard. Each case will then stand for trial to a jury, or the court as the

parties may elect.    All proceedings are according to the civil procedure and all rights are protected and secured.

Neither the city nor individual claimants can complain of the action of the referees, for their whole work is subject to the final supervision and action of the court, when each party interested may be heard as fully as in any other suit or action, and all objections made and exceptions saved to the final action of the court, may be reviewed on appeal to the supreme court.    Hence, the objection that the act attempts to regulate the practice in courts and that trial by jury is denied are neither of them well taken.

It is next contended that the city of Guthrie has never had her day in court, and that her rights have been adjudicated without any opportunity to be present, and make issues or present testimony before the commissioners. The law requires the referees to give public notice in a newspaper published in Guthrie, and to keep an open office from 9 A. M. to 4 P. M. daily.    It is presumed they did their duty in this respect.    If the city failed to take advantage of her privilege and appear before the referees, it is now too late to complain.    It is not shown that the city was ever refused a hearing by the referees, or their right to appear denied.    In no event have they lost any rights by failure to appear before the court and make their showing when the court comes to approve or disapprove the report of the referees.

The city makes the further objection that the act in question is void for conflict with § 4 ch. 848, 24 Stat. Large, p. 171, wherein it is provided that no municipal corporation within a territory shall become in any manner indebted in excess of four per cent. of the value of the taxable property within such corporation as shown by the last assessment for territorial and county pur-

poses previous to the incurring of such indebtedness imposed.

We held in the· Losey case that the debts and tax authorized to be levied owe their validity to the action of the legislature, and that the debts were incurred as of the date of the taking effect of that act. The act took ·effect Dec. 25, 1890, and it is insisted that no assessment had ever been made for territorial and county purposes, and that there was no law authorizing an assessment, and there being no basis on which to rest the liabilities that any and all indebtedness incurred prior to an assessment was necessarily in excess of the maximum and came within the inhibition. This presents an intricate and difficult problem.

When congress created the Territory of Oklahoma, it .authorized county, town, village and school corporations as subordinate municipalities of the territorial government and provided for a full complement of officers for these various subdivisions. The same law provided for compensation for the various officers by fees collected for services rendered. Congress adopted and put in force the laws of the state of Nebraska for the several purposes necessary for carrying on the functions of civil government, but made no provision for raising any revenues, except such as might be derived from licenses or special taxes collected from persons employed in any business in the Territory, which system of raising revenue was specially permitted by the terms of § 6, of the Organic Act.

No provision was made by congress for the assessment of property for any purpose, or in any manner, and no laws were put in force authorizing a levy of taxes for municipal purposes, hence at the time the Territorial legislature adopted the act providing for payment of the

obligations involved in this action, no assessment for territorial or county purposes had been made, nor was there any law in the Territory authorizing any such assessment.    On the same day that the act providing for the payment of these claims took effect, another act adopted by the same legislature took effect, which provides a general system for raising revenues for public porposes, by assessment of property and levy of taxes, and no assessment could be made under this act until the ensuing year.

The statute which it is contended makes the legislative act void is as follows:

"SEC. 4.    That no political or municipal corporation, county or other subdivision in any of the territories of the United States shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per cent. on the value of the taxable property within such corporation, county or subdivision, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by such corporation shall be void."    *    *

Section 7 provides:

"That all acts and parts of acts hereafter passed by any territorial legislature in conflict with the provisions of this act, shall be null and void."    (24 Stat. at Large, p. 170.)

This statute bears the same relation to this territory that a constitutional limitation does to a state.    It is the organic law of the land and any legislation in conflict therewith is void.    A number of the states have similar provisions in their constitutions and a few have identical provisions.

A casual examination of the authorities would lead to the conclusion that there is a conflict in the adjudication

bearing upon the construction of these provisions, but a careful analysis of the several constitutional provisions, discloses a difference in the language which leads to the apparent conflict which does not in reality exist. Some of the courts have recognized two distinct classes of obligations under these limitations, one of which embraces debts contracted by the municipal authorities, in creating which, they exercise discretionary powers. The other class embraces what is termed "enforced obligations," such as are imposed by statutes, and which the municipal authorities are required by law to pay, and over which they exercise no control. The claim in this suit is one of this class. It is an obligation imposed upon the city of Guthrie by legislative enactments, and one in which the city council is allowed no voice. It is not incurred by the city, but is imposed upon it by legislative power. In discussing this question in the Losey case, we followed the rule enunciated by the courts of Missouri, California, Iowa and some others, and held that the limitation imposed by the act of congress was not a limitation on the legislature but only on the municipal authorities.

The authorities on this question were not cited by counsel in the Losey case and we gave the question but a casual examination as it was not decisive of any question in that case as presented by the record.

The question is squarely presented now, and we have examined all the authorities at our command bearing upon the question, and have concluded that we were in error in our holding in the Losey case to the effect that the limitation imposed by the act of 1886, is not an inhibition on the legislature of the territory.

The supreme court of the United States has construed the provisions of state constitutions, which are in lan-

guage identical with the act of congress and held that the inhibition applies to *enforced obligations, legislative enactments, officers' salaries and all classes of debts of every character whether contracted by the municipal authorities or imposed by statutory enactments, or incurred for the necessary running expenses of the municipality.*

The decisions of that court are controlling, and where there is a conflict of authority on questions involving the constructions of a law of the United States, we are bound by that construction given by the highest court in the land, and which court exercises appellate power over this court.

It is now a well settled proposition that if the city of Guthrie was prohibited by the terms of the act of 1886 from contracting an obligation or debt for the reason that no assessment had been made as a basis for such liabilities, then the legislature had no power to impose such an obligation upon her.

The constitution of the state of Colorado has a provision similar to the provision in the act of 1886 respecting territories. This constitutional provision was before the supreme court of Colorado for interpretation, and that court in *People v. May*, 9 Col. 404, 12 Pac. 838, said:

"Counsel now ask us to say that the inhibition reaches such debts only as are the result of voluntary contracts made by the county authorities. They seek to have us distinguish between the purpose for which a debt is created and the *manner* of its creation. In other words, if we rightly understand their position, they assert as between two items of county expenditure, which are equally necessary, the constitutional limitation of indebtedness having been reached, a debt created for one by the voluntary contract of the commissioners would, con-

ceding the correctness of our former opinion, be forbidden and void, while a debt in connection with the other directly resulting from action under legislative enactment, might be perfectly valid.

"Should the position of counsel be sustained? The phrase, *for all purposes*, seems to include debts without regard to the method of their contraction.    The language itself does not discriminate between purposes governing *legislative action* and purposes controlling the conduct of *county authorities*.    It apparently covers every kind of indebtedness, voluntarily authorized or voluntarily contracted.    Whether the same be incurred in one way or another, whether created for what may be termed necessary running expenses, or in the consummation of other legitimate municipal objects, the inihibition appears to be equally applicable.    The constitutional limitation having been reached, a debt for the statutory fee of an officer, or a statutory liability in connection with any other municipal employment or expense, is apparently as much inhibited as is indebtedness for labor performed or materials furnished under contract with the commissioners.    Such we say is, in our view, the plain import of the language referred to.    And unless the same section or other sections of the constitution contain provisions inconsistent with this view, or unless there exist some objection so cogent as to demonstrate that the framers of the constitution could not have foreseen and intended such a construction, its adoption becomes a legal necessity."

Again the learned judge who delivered the opinion in this case says:

"In conclusion upon this branch of the case, we may inquire, why should the constitutional convention have intentionally left unrestricted the amount of county indebtedness that might arise *by operation of law?*    Experience has demonstrated, and the members of the convention knew, that through such an opportunity the wise purpose of the provision would be largely evaded.    If there were no control of legislative discretion in the

passing of laws which might operate to create county indebtedness, it is plain that the great evil under consideration by the convention would be but imperfectly avoided.    In view of the language used here as elsewhere in the constitution, we cannot suppose that, while the convention distrusted the wisdom of county authorities in the matter, they had unbounded confidence in the judgment of the legislature.    A limitation of county indebtedness binding upon the legislature as well as the county authorities, was only a reasonable and a wise precaution."

These remarks are pertinent to the question before us and apply with equal force to the congressional limitation upon municipal authorities in the territories.

This same question was before Circuit Justice Brewer, of the federal court for the district of Colorado, *Rollins v. Lake County*, 34 Fed. Rep. 845, and the learned justice overruled the case of *People v. May*, 9 Col. 404, and in discussing the questions involved said:

" The other class of debts spring from neither the voluntary nor the tortious acts of county officers.    The county has neither voice nor opportunity in the matter. They are imposed by the legislature and are generally such as affect the state at large as well as the county. It is well here to stop a moment and consider what a county is.    In one aspect it is an independent corporation, having peculiar private interests and concerns. The management of these interests and concerns, is as a general rule confided to the county officials, and the debts incurred by the management of those private affairs are created by the voluntary contracts of those officials.    In another aspect the county is but a mere sub-division of the state, and only determines locally the administration of those affairs which affect the people of the state as a whole.    Take the administration of justice in the courts, the matters of elections, the preservation of the public peace and matters of a kindred nature.    They are not the purely private concerns of the

county.  They affect vitally and largely the interests of
the state as a whole.  It is common elsewhere, and was
and is the case here, that the cost of these public serv-
ices is cast largely upon the county; not upon the
county as an independent corporation and solely inter-
ested in and benefitted by such services, but as a portion
of the state, and as such portion thus contributing to
the general welfare.  In the creation of debts for these
services, the county is not consulted.  It has no voice in
saying when they shall be incurred or to what extent.  I
know the line of demarcation is not preserved with abso-
lute uniformity, but the general character of the differ-
ence between contractual and compulsory obligations is
as I have stated.  This is a matter of common knowl-
edge and must have been within the contemplation of the
framers of the constitution.  Was it their intent to
relieve the county of liability for the compulsory obliga-
tions?  See what that would imply; the possibility that
county commissioners, by extravagance, might largely
impair, if not practically defeat, the administration of
justice, the preservation of the peace, and even the
holding of elections.  For public service without ex-
pectation of pay is seldom done, or, if done, only
poorly.  Will a constable serve process, will a sheriff at
personal risk, preserve the public peace; will a county
attorney prosecute with vigor and interest; will jurors or
witnesses attend, giving up private interests for public
good with the knowledge that these, their services, are
gratuitous and will receive no compensation?  *   *

" Can it be that the framers of the constitution in-
tended that compensation for such services should de-
pend upon the question whether a limit of county
indebtedness had been reached?  *   *

" These considerations of a general nature impress me
forcibly with the conviction that it was not the intent
of the framers of this section to permit a county to
escape from liability on account of such compulsory
obligations by the fact that the general limit of indebted-
ness has been reached.  *   *

"My conclusion, therefore, is that it is no defense to

an action upon county warrants issued in payment of these compulsory obligations, that the general limit of county indebtedness has been reached."

This case was appealed to the supreme court of the United States, (*Lake County v. Rollins*, 130 U. S. 662.), and the court overruled the decision of Justice Brewer and the doctrine announced by the supreme court of Colorado in *People v. May. supra*, was affirmed. Mr. Justice Lamar in delivering the opinion of the court, said:

"We cannot say, as a matter of law, that it was absurd for the framers of the constitution for this new state to plan for the establishment of its financial system on a basis that should closely approximate the cash basis. It was a scheme formed by some of the ablest of the earlier American statesmen, nor can the fact disclosed in the bill of exceptions, that, after the adoption of the state constitution, the county officials and many of the people, designedly or undesignedly, disregarded the constitutional rule, render the plan absurd. If it was a mistaken scheme, if its operation has proved, or shall prove to be more inconvenient than beneficial, the remedy is with the people, not with the courts. *    *

"Neither can we assent to the proposition of the court below that there is as to this case a difference between indebtedness occurred by contracts of the county and that form of debt denominated 'compulsory obligations.' The compulsion was imposed by the legislature of the state even if it can be said correctly that the compulsion was to incur a debt; and the legislature could no more impose it than the county could volutarily assume it, as against the disability of a constitutional prohibition. Nor does the fact that the constutition provided for certain county officers, and authorized the legislature to fix the compensation and that of other officials, affect the question.

"In short, we conclude that article 6 aforesaid is 'a limitation upon the power of the county to contract any

and all indebtedness, including all such as that sued upon in this action.'"

Our Organic Act provides "that the legislative power shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States." (§ 6, ch, 182, 26 Stat. at Large, 81.)

The provisions of ch. 818, 24 Stat. at Large, 170, were in force at the time of the adoption of the Organic Act, and any legislative enactment of the territorial legislature in conflict with the provisions of said act of congress is void. Congress has placed a limitation on the power of municipal corporations within the territories to become indebted, in any manner, or for any purpose, to any amount in the aggregate, exceeding four per cent. of the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness. This limitation not only extends to the power of the corporation to incur liabilities, but also extends to the power of the legislature to impose any obligation upon such corporation in excess of a statutory limit,

The constitution of the state of Iowa, art. 2, § 3, provides as follows:

"No county or other political municipal corporation shall be allowed to become indebted in any manner or for any purpose to an amount in the aggregate exceeding five per cent of the value of the taxable property within such county or corporation, to be ascertained by the last state and county tax list previous to the incurring of such indebtedness."

This provision of the Iowa constitution was before the supreme court of the United States for construction in the case of *Doon Township v. Cummins*, 142 U. S. 566, and Mr. Justice Gray, speaking for the court, said:

14——IV.

" The scope and meaning of this provision of the fundamental and paramount law of the state is clear and concise.   No municipal corporation shall be allowed to contract debts beyond the constitutional limit.   When that limit has been reached no debt can be contracted in any manner or for any purpose.   The limit of the aggregate debt of the municipality is fixed at five per cent of the value of the taxable property within it, and that value is to be ascertained by the last state and county tax list, which are public records open to all, and of the contents of which all are bound to take notice.

"The prohibition is addressed to the legislature as well as to all municipal boards and officers and to the people, and forbids any and all of them to create or to give binding force to any debts of the corporation in excess of the limit prescribed.

"The prohibition extending to debts contracted 'in any manner or for any purpose,' it matters not whether they are in any sense new debts, or are debts contracted for the purpose of paying old ones, so long as the aggregate of all debts, old and new, outstanding at one time and for which the county corporation is liable to be sued, exceeds the constitutional limit.

"The power of the legislature in this respect being restricted and controlled by the constitution, any statute which purports to authorize municipal corporations to contract debts in any manner or for any purpose whatever in excess of that limit, is to that extent unconstitutional and void."

The twelfth section of article 9 of the constitution of the state of Illinois, provides:

"No county, city, town, township, school district or other municipal corporation shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding five per cent. on the value of the taxable property therein to be ascertained by the last assessment for state and county taxes previous to incurring such indebtedness."

· In construing this provision in the case of *Buchanan v. City of Litchfield,* 102 U. S. 278, Mr. Justice Harlan said:

"The words employed are too explicit to leave any doubt as to the object of the constitutional restriction upon municipal indebtedness. The purpose of its framers beyond all question was to withhold from the legislative department the power to confer upon municipal corporations authority to incur indebtedness in excess of a prescribed amount."

In the case of *Litchfield v. Ballou, et al.* 114 U. S. 190, this same provision of the constitution of Illinois was again before the court for construction and Mr. Justice Miller, speaking for the court, said:

"It shall not become indebted. Shall not incur any pecuniary liability. It shall not do this in any manner. Neither by bonds, nor notes, nor by express or implied promises. Nor shall it be done for any purpose. No matter how urgent, how useful, how unanimous the wish. There stands the existing indebtedness to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt, in any manner or for any purpose whatever. If this prohibition is worth anything, it is as effectual against the implied as the express promise, and is as blinding in a court of chancery as a court of law."

In *Dixon County v. Field,* 111 U. S. 83, there was brought in question the effect of the constitution of Nebraska of 1875, art. 12, § 2, prohibiting any county or other subdivision of the state from ever making donations to any railroad without a vote of the qualified voters thereof held by authority of law, and providing that such donations in the aggregate should not exceed ten per cent. of the assessed value of the county. In delivering the opinion of the court Mr. Justice Mathews says:

"We regard the entire section as a prohibition upon the municipal bodies enumerated in the matter of creat-

ing and increasing the public debts by express and positive limitations upon the legislative power itself."

The thirteenth article of the constitution of Indiana was adopted on the 14th day of March, 1881, and reads as follows:

"No political corporation in this state shall ever become indebted, in any manner, or for any purpose to an amount in the aggregate exceeding two per cent. on the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount, given by such corporation, shall be void."

The supreme court of Indiana, in *Sackett v. City of New Albany*, 88 Ind. 473, held "that a city being indebted to an amount equal to two per cent. of its taxable property, was prohibited from issuing an order on its treasury, even for current expenses, whenever there were no funds in its treasury which might be applied to its payment."

The rule announced in the foregoing case is further supported by the following cases: *Prince v. City of Quincy*, 105 Ill. 138; *Prince v. Quincy*, 128 Ill. 443; *Low v. People*, 87 Ill. 385; *City of Springfield v. Edwards*, 84 Ill. 626; *Howe v. Madison*, 107 Ind. 106; *Sutliff v. Lake County Commissioners*, 147 U. S. 230.

As heretofore cited, the courts of highest resort in the States of California, Iowa, Missouri and possibly others, have held that similar constitutional limitations, upon municipal indebtedness, do not apply to that class of obligations termed "enforced obligations," or liabilities in which the corporate authorities have no voice, but their decisions are based upon constitutional provisions, which while in terms somewhat similar to the act of 1886, yet are construed to limit only *the incurring of*

*liabilities*, and not to extend to legislative power or or imposed obligations.

The supreme court of California in a recent case refers to the case of *Lake County v. Rollins*, 130 U. S. 662, and says that the case is not in point as it deals with a constitutional provision different from the one in that state.    The California statute provides:

"That no city shall *incur* any liability exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the qualified voters of said city."

This was held to apply only to such liabilities as were *incurred* by the city authorities and not to that class of liabilities which were imposed upon the city by legislative enactments.    (*Lewis v. Widber*, 33 Pac. 1128.)

In one class of cases the municipal authorities are prohibited from *incurring liabilities* beyond a certain fixed limit.    In the other class of cases the municipal authorities *are prohibited from becoming indebted in any manner or for any purpose beyond a fixed limit.*

From the foregoing authorities the conclusion is irresistible that liabilities *incurred* by or obligations imposed upon a municipal corporation operating under a constitutional or statutory limitation, such as is prescribed in the act of 1886, in reference to municipal corporations within a territory in excess of the maximum limit are absolutely void, and that no distinction can be made between the two classes of liabilities, but the congressional prohibition operates on both alike, and is as much an inhibition upon the legislative power as the municipal authority.

Having determined that the legislative enactment imposing these obligations upon the city of Guthrie is within the congressional prohibition, provided the limi-

tation was an inhibition on the city authorities at the time of the adoption of said act; the next question to be determined is, was the city of Guthrie prohibited from becoming indebted, in any manner, and for any purpose, prior to the taking and completion of the first assessment under the laws of the Territory. It will be observed that the act of congress in question provides that all municipal corporations in the territory are prohibited from becoming indebted in any manner or for any purpose to any amount in the aggregate exceeding four per cent. on the value of the taxable property within such corporation, county or subdivision to be ascertained by the last assessment for territorial and county taxes, previous to the incurring of such indebtedness.

The laws of the territory provide a system of assessment under which taxable property is assessed by the township and county assessors, and the assessment rolls filed with the county clerk on the first Wednesday of May of each year. The township, town and city boards of equalization meets on the first Monday in June. Their report is certified to the auditor of the Territory and the territorial board meets for final action, on these assessments, and such other assessments as said board is authorized to make, on the first Monday in July of each year, and the result of their action is certified to the several county clerks, after which the several clerks aforesaid are required to complete the assessment rolls by making any changes directed by the territorial board. The rolls are then, for the first time, complete, and they can form no basis for fixing the maximum of indebtedness that may be incurred by the several subdivisions, until such final action is taken and the assessment rolls complete, as provided by the territorial statutes. (*Nes-*

*bet v. School Dist.* 25 Fed. 635; *Culbertson v. Fulton*, 127
Ill. 30; *Wilkinson v. Van Ormon*, 70 Iowa, 230.)

No such action had been taken by any of the township,
county or territorial officers at the time the legislature
attempted to impose upon the city of Guthrie the liabil-
ity for the debts mentioned in said statute, and the law
authorizing assessments had not then become operative.

Under the limitation imposed by the act of 1886 the
power to incur debts by said city, or the legislature to
impose the same upon her, was limited by the amount of
the assessed valuation of taxable property in the city, as
shown by an assessment previously ascertained.    With-
out this assessment there was no power to create liabili-
ties to become a future charge.    There was no basis for
debts of any character.    No basis upon which to fix a
maximum of four per cent. and hence all debts of any
character or for any purpose incurred by the city or
imposed by operation of law were without authority and
void.    It was necessary, as a condition precedent, that an
assessment should first be made, otherwise there could
be no limit fixed.    If the city could contract one hun-
dred dollars, it could contract a million dollars, and
exhaust the entire ability to contract, and anticipate all
revenues for years to come.

No valid debts could be contracted until after the ter-
ritorial board has made their final report in July, 1891,
and all debts contracted or imposed by statute prior to
that time are within the inhibition of the congressional
act under consideration.

These conclusions are supported by the reasoning in a
number of cases involving similar questions and similar
prohibitory laws, although we have been unable to find
any adjudicated case, which presents the identical ques-
tion before us.

In *County of Dixon v. Field*, 110 U. S. 83, the court had under consideration a constitutional question of the state of Nebraska limiting municipal indebtedness, and the county of Dixon was resisting an issue of bonds which it was claimed were in excess of the constitutional limit, and Mr. Justice Matthews said:

"In determining the limit of power, there was necessarily two factors; the amount of the bonds to be issued and the amount of the assessed value of the property for purposes of taxation.   *   *   *

"No recital involving the amount of the assessed taxable valuation of the property to be taxed for the payment of the bonds can take the place of the assessment itself, for it is the amount as fixed by reference to that record, that is made by the constitution the standard for measuring the limit of the municipal power."

This proposition was approvingly quoted in *Doon Township v. Cummins*, 142, U. S. 375; *Sutliff v. Lake County*, 147, U. S. 237.

The question of the validity of municipal bonds was again before the court in the case of *Buchanan v. City of Litchfield*, 102, U. S. 278, from the circuit court of Illinois, and the court said:

"In determining whether the constitutional limit of the indebtedness has been exceeded by a municipal corporation an inquiry would always be necessary as to the amount of the taxable property within its boundaries. Such inquiry would be solved not by information derived from individual officers of the municipality, but only in the mode prescribed in the constitution, that is, by reference to the last assessment for state and county taxes for the year preceding the issuing of the bonds. The purchaser of the bonds was certainly bound to take notice, not only of the constitutional limitation upon municipal indebtedness, but of such facts as the authorized

official assessment disclosed concerning the valuation of taxable property within the city for the year 1873."

Purchasers of municipal securities are charged with notice of the laws granting power to create the liabilities and if there is a want of power, no legal liability can be created. (*Anthony v. Jasper*, 101 U. S. 697; *Northern National Bank v. Porter Township*, 110 U. S. 608.)

In *Lake County v. Graham*, 130 U. S. 683, in discussing the limitation found in the constitution of Colorado, it is said:

"In this case the standard of validity is created by the constitution. In that standard two factors are to be considered, one the amount of the assessed value, and the other the ratio between the assessed value and the debt proposed. These being exactions from the constitution itself, it is not within the power of a legislature to dispense with them either directly or indirectly."

This same reasoning and rule is approved in *Doon Township v. Cummins*, 142, U. S. 366. This reasoning holds good in the case at bar. The act of congress fixes the standard of validity of indebtedness for the city of Guthrie, and in that standard two factors are to be considered, *first*, the amount of the assessed value of taxable property as shown by the last assessment previous to the incurring of such indebtedness, and *second*, the aggregate amount of indebtedness for all purposes. This standard having been fixed by congress, and the basis of all indebtedness, being a previously ascertained assessment for territorial and county purposes, it follows as a necessary corollary that, when there is no assessment, there can be no power to contract; where there is no basis there is no legal liability. When the factor is absent which is the foundation and basis for all power to incur liabilities, there can be no valid obligation incurred by the city officials, and the legislative power is confined

to such obligations as do not come within the congressional inhibition. The legislature, the municipal officers, the public, and individuals dealing with such corporations in territories, are bound to take notice of the laws of congress and the power of cities to become indebted, and persons dealing with such corporations under a system of laws such as we now have, which provides for keeping a public record of all assessments and registering all warrants on the public treasuries, must deal at their peril and take their own risks. The assessed valuation of property which is the basis of power for incurring debts can always be ascertained by resort to public records. The amount of aggregate liabilities can always be learned, by proper investigation and inquiry, and the maximum limit is a matter of mathematical computation, which is easily ascertained; hence, there is no excuse for any person suffering any loss on account of the operation of the law.

In *People v. May,* 12, Pac. 842, the supreme court of Colorado very properly and explicitly declares the rule:

"There can be no legal indebtedness beyond the constitutional limit. After such limit is reached, therefore, warrants or other instruments representing supposed municipal liabilities are of no legal force or effect."

The constitutional limit in the case under consideration was naught, and the aggregate amount of liabilities that could be incurred by, or imposed upon, the city of Guthrie prior to any assessment was zero.

The following authorities will be found, to in a greater or less degree, support the propositions we have enunciated:

*Buchanan v. Litchfield,* 102 U. S. 278; *Dixon Co. v. Field,* 111 U. S. 83; *Nesbit v. Independent School Dist.,* 25 Fed. 633; *Nesbit v. Independent School Dist.,* 144

U. S. 610; *Law v. People*, 83 Ill.394; *Litchfield v. Ballou*, 114 U. S. 190; *Prince v. City of Quincy*, 105 Ill. 138; *Prince v. City of Quincy*, 128 Ill. 443; *Lake Co. v. Gresham*, 130 U. S. 130; *Chaffee Co. v. Potter*, 142 U. S. 355; *People v. May*, 10 Pac. 651; *Davenport v. Klinshmidt*, 6 Montana, 502; *Sackett v. New Albany*, 88 Ind. 473; *Dumphey v. Supervisors*, 12 Pac. [Iowa] 306.

The conclusion that we have reached on this question may seem to be in conflict with the decision of the supreme court of Washington, in case of *Childs v. Anacortes*, 32 Pac. 217.    In that state there is a constitutional inhibition against a city incurring any indebtedness in excess of one and one-half per cent. of the valuation of the taxable property within its limits.    Anacortes was a newly incorporated city in which no assessment had been made by the authorized city officers for city purposes, but an assessment of the property embraced within the city limits had been made for county purposes before the city was incorporated, and the city authorities took steps to determine the amount of such assessment on the property embraced in the corporate limits, from the assessment made prior to the incorporation of the city, and the court held that the assessed valuation might be ascertained in this manner, and that it was a proper basis for limiting the liabilities of the new city.    This case is not in conflict with the views we have expressed, nor is it in point, as no assessment for any purpose had ever been made of the property within the corporate limits of the city of Guthrie either before or after it became a city, prior to the time the legislature adopted the act imposing the liabilities mentioned in said act upon her.

We have examined a large number of cases in investigating the questions here determined, not only on

account of the care with which a court should proceed in setting aside a legislative enactment, but by reason of the importance and wide reaching effects of the conclusion we have reached.

In some of the cases where courts have been called upon to interpret and apply provisions of organic law similar to ours. questions of hardship, public policy, repudiation and inconvenience have all been argued and insisted upon, and we here give and approve some extracts from leading cases on these questions.

In *Law v. People*, 87 Ill. 385, cited and approved in *Lake Co. v. Rollins*. 130 U. S. 673, the Illinois court appropriately said:

" But should it work hardship to individuals, that, by no means, warrants the violation of a plain and emphatic provision of the constitution. The liberty of the citizen and his security in all his rights in a large degree depend upon the rigid adherence to the provisions of the constitution and the laws and their faithful performance. If courts, to avoid hardship, may disregard and refuse to enforce their provisions, then the security of the citizen is imperiled. Then the will, it may be the unbridled will, of the judge would usurp the place of the constitution and laws, and the violation of one provision is liable to speedily become a precedent for another, perhaps more flagrant, until all constitutional and legal barriers are destroyed and none are secure in their rights. Nor are we justified in resorting to strained construction or astute interpretation to avoid the intention of the framers of the constitution or the statutes adopted under it even to relieve against individual or local hardships. If unwise or hard in their operation, the power that adopted can repeal or amend and remove the inconvenience. The power to do so has been wisely withheld from the courts, their functions being only to enforce the laws as they find them enacted."

Mr. Justice Elbert, in *People v. May*, 10 Pac. 652, has most fittingly said:

" Nor is there any just force or propriety in the argument of repudiation. The law is, and all persons are presumed to know it, that municipal bodies can only exercise such powers as are conferred upon them, and all persons dealing with them must see that the body has power to perform the proposed act. County authorities as well as all parties dealing with them must take notice of the limit which the people in their constitution have prescribed for county indebtedness. No plea of ignorance or hardship can be allowed to avail. To afford security the rule must be inexorable. If the argument of repudiation is to pravail, then every constitutional limitation against incurring indebtedness, whether state, county or city, 'is a sounding brass and a tinkling cymbal.' Its violation in every instance would supply the reason for not enforcing it, because to enforce it would deprive parties of benefits arising from its violation, and this would be repudiation."

In *Buchanan v. Litchfield, supra*, Mr. Justice Harlan, referring to the argument of counsel, that the effect of the construction would work a great hardship, said:

" Our attention is called by counsel to the exceeding hardship of the case upon those whose money it is alleged supplied the city of Litchfield with a system of water works, the benefits of which are daily enjoyed by the inhabitants. The defense is characterized as fraudulent and dishonest. Waiving all considerations of the case in its moral aspect, it is only necessary to say that the settled principles of law cannot be, with safety to the public, disregarded in order to remedy the hardship of special cases."

In the case of *People v. May*, 10 Pac. 641, the effect of legislative and executive construction was urged upon the court, and it was insisted that the interpretation given to the constitutional provision limiting indebted-

ness of counties and cities by the legislative and executive departments of the state, as well as the municipal officers themselves, should be considered by the court as controlling. The court refused to recognize any such a rule, and held that the court must construe the law as they found it, and when it was not clothed in vague or ambiguous terms there was no reason for legislative or executive construction.

The statute of 1886 was adopted by congress to remedy certain evils, which were prevalent in the territories, and as remarked by Justice Elbert, in *People v. May, supra,* "it was their duty not only to provide against the recurrence of evils patent and already experienced, but also to guard every point where abuses were liable to creep into the administration of public affairs. The waste, extravagance, frauds, peculations, defalcations and tax burdens, disgracing and encumbering the administration of American municipalities, county, town and city, had long been national topics of discussion written about by publicists, denounced by the press and resolved about by political parties, and were well known to the country at large."

It was to meet this condition of affairs and remedy these evils, protect the people from the acts of dishonest and extravagant officials, as well as from unjust and burdensome taxes, that congress adopted the statute limiting the power of counties, cities, towns and districts in the territories from becoming indebted in any manner or for any purpose in excess of four per cent. of their taxable property. These municipalities get their life, existence and power from the congress of the United States, and it was the duty and province of that body to exercise a proper control over them. This act was clearly intended as a limitation on the power of the corporate

powers to become indebted. They get whatever power they have from the laws enacted or permitted by the United States congress, and in fixing a basis upon which to rest this power of creating indebtedness, congress prescribed that it should be an assessment of taxable property for territoral and county purposes made previous to the incurring of such indebtedness. Language cannot be plainer and the intent and purpose more certain. A provision was placed in said act for the payment of existing indebtedness at the date of its adoption, but all future obligations, debts or liabilities, were to be controlled by the limitations and inhibitions contained in the statute.

All debts contracted, incurred or imposed after July 30, 1896, the date of the approval of the statute, must owe their validity and legality to two factors, which were matters of record, and of which all persons must take notice. There must have been an assessment of taxable property within the county embracing the corporation, and the debt when added to existing obligations must not exceed four per cent. of such assessment.

This is a wise and liberal limitation, and if conditions existed which made it impracticable to operate municipal governments without creating debts, it is a condition which the courts cannot remedy; if any is required, it lies with congress, and not with the courts or territorial legislature.

If the debts provided for in the legislative enactments relating to the city of Guthrie are of a class that in good conscience and sound morals ought to be paid, let the holders of such claims take their case to the power that has authority to give them a remedy. There being no power in the legislature at the time the act was passed imposing these liabilities on the municipalities men-

tioned in the statute for the reason stated, said act is void and cannot be enforced. So much of the opinion in the case of the *City of Guthrie v. Territory ex rel. Losey*, 1 Ok. 188, as holds that the limitation found in the act of 1886, is not a limitation on the legislature, is overruled.

Several other questions are presented by the record in this but inasmuch as we regard this question as conclusive of the case we need not examine them.

The judgment of the district court of Logan county is reversed with directions to dismiss the proceedings.

Bierer, J., not sitting; all the other Justices concurring.