Hall Lithographing Co. v. Board of Comrs. of Roger Mills Co.

HALL LITHOGRAPHING CO. v. BOARD OF COMMISSIONERS OF
ROGER MILLS COUNTY.

(Filed Aug. 25, 1899.)

1. COUNTIES—*Indebtedness—Statute Construed.* Section 4 of the act of
congress of July 30, 1886, which ordains "that no political or munici-
pal corporation, county or other sub-division of the territories of
the United States, shall ever become indebted in any manner or
for any purpose to an amount in the aggregate, including exist-
ing indebtedness, exceeding 4 per centum of the value of the tax-
able property within such corporation, county or sub-division, to be
ascertained by the last assessment for territorial and county taxes
previous to the incurring of such indebtedness," is not a grant of
power upon the county to incur indebtedness, but it is a limitation
thereon.

2. INDEBTEDNESS—*Limitation of.* The manifest intention of said act
was to limit the amount of indebtedness that may be created by
the various municipalities in the territories of the United States,
and not to prohibit them from incurring any indebtedness for the
purposes of carying on the ordinary and necessary functions of
local government, before an asessment was made as provided
by law, and within the purview of said act.

3. SAME—*How Determined.* In determining the limit of power,—that
is, the amount of indebtedness which a municipality may create,—
two factors are to be considered: (1) The amount of the warrants
or other obligations that have been issued, and (2) the amount of
the assessed value of the property within the corporation for the
purposes of taxation, as ascertained by an assessment for terri-
torial and county taxes previous to the incurring of such indebted-
ness. These two important factors are not the source of muni-
cipal power to create indebtedness, but they are the two necessary
factors by which the limitation is to be determined. Hence the
ascertainment of the amount of taxable property within the
corporation is the means of determining whether or not the federal
limitation has been reached or passed, and it is not to be regarded
as the source of power upon which any indebtednes may be based.
And the fact that a newly organized county or municipal corpor
ation has been unable to make an assessment   does not warrant
us in construing this act to mean that there is a total want of
power to create any indebtedness within such county or muni-
cipality, regardless of the amount of taxable property therein.

4. SAME—*When Act Becomes Operative.* It must therefore follow that section 4 of said act does not become operative until the value of the taxable property within the county or municipality has been ascertained by an assessment for territorial and county taxes, for the reason that,until such an assessment has been made, there is no means of determining the value of the taxable property within the county or municipality, and hence there is no standard for ascertaining the limit of indebtedness that may be created within the purview of said act.

5. NEW COUNTIES—*Indebtedness.* A newly organized county in this Territory has the power to incur a valid indebtedness, and issue warrants as an evidence thereof, prior to the making of an assessment of the taxable property therein for the purposes of territorial and county taxation, to meet the ordinary and necessary expenses of carrying on and conducting the functions of county government; and the incurring of such indebtedness is not in violation of section 4 of the act of congress of July 30, 1886, which prescribes, among other things, that no county shall ever become indebted in excess of 4 per centum of the value of the taxable property therein, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebedness. (Burford, C. J., dissenting.)

(Syllabus by the Court.)

*Error from the District Court of Roger Mills County; before John C. Tarsney, District Judge.*

*John F. Stone* and *John B. Harrison,* for plaintiff in error.

*James B. Diggs* and *R. J. Edwards,* for defendant in error.

STATEMENT OF THE CASE.

This was an action by the defendant in error, the Hall Lithographing company, against the plaintiff in error, the board of county commissioners of Roger Mills county, to recover the sum of $1,516.84 upon four county warrants issued by said county to Hall and O'Donald on the 12th day of November, 1892. Judgment for plaintiff. Defendant brings error. Affirmed.

These warrants werre issued for books, records, and stationery furnished by said Hall and O'Donald to said county, and at the special instance and request of the board of county commissioners of said county. To the plaintiff's petition the defendant, the board of county commissioners, filed the following answer:

"First. That said defendant denies each and every material allegation contained in the various paragraphs. of the plaintiff's petition.

"Second. Defendant alleges that the territorial board of equalization completed its labors for the year 1893 on the 26th day of July, 1893, then and thereby completing the first annual assessment of Roger Mills county ever made for the purposes of territorial and county taxation; that the aggregate of such assessment was the sum of $186,369.84; that all the warrants declared upon in plaintiff's petition were issued, and the contracts were made and the expenses incurred, in settlement of which warrants were issued, prior to the completion of said first assessment; that there was, at the time said debt was created, no cash in the treasury, no taxes levied, due or payable, and no other funds of any kind or character, out of which such warrant could be paid. Wherefore said defendant alleges that said warrants are void, and that said county is not liable for the payment thereof, as being issued and creating a debt in violation of the provisions of the act of congress approved July 30, 1886, entitled 'An Act to Prohibit the Passage of Local or Special Laws in the Territories of the United States, to Limit Territorial Indebtedness, and for Other Purposes.'

"Third. That, making all the allegations of the preceding paragraph a part of this paragraph, defendant alleges further that, prior to the issuance of the warrants declared upon in the plaintiffs' petition, and prior to the making of the contracts and incurring of the expenses in settlement of which such warrants were issued, the

said county had become indebted in an amount exceeding $7,454,79; that there was, at the time such debt was created no cash in the treasury, no taxes levied, due or payable, and no bonds of any kind or character, out of which such warrants or any of such prior debts could be paid. Wherefore defendant alleges that said warrants are void, and that said county is not liable for the payment thereof, as being issued and creating a debt in excess of the 4 per cent. limitation fixed by the act of congress set forth in the preceding paragraph by title, Wherefore defendant prays judgment for its costs herein."

To this answer the plaintiff, the Hall Lithographing company, filed a reply, containing a general denial of each and every material allegation contained in said answer.

The case was tried by the court without a jury upon the following written stipulation:

"Territory of Oklahoma, Roger Mills County—ss.: In the District Court.

"Hall Lithographing Company, Plaintiff, v. The Board of County Commissioners of Roger Mills County, Defendant. Stipulation.

"It is hereby stipulated and agreed: That this cause be removed to the district court of Canadian county for trial, and that it there be submitted upon the agreed statement and admissions attached hereto, and that the demurrer pending be disposed of in that court. Defendant admits that the warrants sued upon were issued to the plaintiff as in the petition alleged, that the plaintiff is the owner and holder thereof, that said warrants are unpaid, and that said plaintiff is a duly-organized corporation, as alleged in said petition; that the goods, wares and merchandise, in settlement of which such warrants were issued, were furnished under the contract hereto attached, marked 'Exhibit A,' and were

delivered at the times shown by the bill hereto attached, marked 'Exhibit B,' showing the date of shipment of such goods; that such warrants were issued after said goods were received; that the goods, wares, and merchandise in settlement of which warrant No. 20, for the sum of $80 was issued, were delivered on or about December 21, 1892, and were furnished under the aforesaid contract. It is further agreed: That the first annual assessment ever made of taxable property of said Roger Mills, formerly F, county, for the purposes of territorial and county taxation, was completed on July 26, 1893. That the amount of said assessment was $186,369.84. That at the time the contract herein set forth was made, and at the times when the goods were delivered thereunder, there was no cash in the treasury of said county, no taxes levied, due or payable, or any other funds of any kind or character out of which such obligations or any prior obligations could be paid. It is further agreed: That the list of warrants hereto attached is a correct list of the obligations of said county, incurred prior to December 27, 1892, showing the date, purpose, to whom issued, amount and date of payment; and that the same may be used as evidence in this case, without objection as to competency; and that the said list shows the obligations outstanding at said date, such list being marked 'Exhibit C;' such exhibit to be treated as the record were they present and properly presented to the court.

"JAMES B. DIGGS, of Counsel for Pltff.
"JOHN F. STONE, Atty. for Defendant."

Exhibit A, referred to in the stipulation, is as follows:

"CHEYENNE, O. T., 4—25—92.

"For and in consideration of the sum of fourteen hundred and forty-five dollars ($1,445.00) in county scrip, I hereby agree to deliver at the town of Canadian, Texas, the supplies for county F, as per attached schedule, all freights to be prepaid, and amounts as paid to be added

to bill.   Scrip to bear interest at legal rate, to commence ninety days from date.

"M. W. CARRICO, for Hall and O'Donald Litho. Co.

"C. M. DUNBAR, Chairman Co. Board.

Exhibit B, referred to in the stipulation, contains an itemized account of the books, records, and stationery furnished by the Hall Lithographing company to the board of county commissioners.   The account is verified as follows:

"State of Kansas, Shawnee County—ss.:

"I do solemnly swear that the foregoing account is just and correct, is due, and remains unpaid; that the charges therein are the legal or ordinary charges for such work.   So help me God.                    H. L. HALL.

"Subscribed and sworn to before me this 10th day of September, 1897.   George N. Hubbard, Notary Public. [Seal.]   My commission expires June 18, 1901."

It appears from Exhibit C, referred to in the stipulation, that the total amount of the outstanding indebtedness of said county prior to December 27, 1892, was $3,564,83.

On the 24th day of February, 1898, the court, upon the pleadings and written stipulation, found that the defendant, the board of county commissioners, was indebted to the plaintiff in the sum of $1,516,84, together with interest thereon in the sum of $480.83, and thereupon rendered judgment in favor of the plaintiff, the Hall Lithographing company, and against the defendant, the board of county commissioners of Roger Mills county, for the sum of $1,997.67 and costs of the action; to which finding and judgment of the court the defendant duly excepted at the time.   Thereupon a motion for a new trial was duly filed, considered, and overruled, and ex-

ception allowed, and the defendant, the board of county commissioners, brings the case here on appeal for review.

Opinion of the court by

HAINER, J.: The only question to be considered and determined in this case upon the agreed statement of facts is whether the plaintiff in error, Roger Mills county, had the power to create a valid indebtedness, and issue warrants as an evidence thereof, prior to the making of an assessment for territorial and county taxes, within the purview of section 4 of the act of congress approved July 30, 1886, which is as follows:

"That no political or municipal corporation, county or other subdivision of the territories of the United States, shall ever become indebted in any manner or for any purpose to an amount in the aggregate, including existing indebtedness, exceeding 4 per centum on the value of the taxable property within such corporation, county ,or subdivision, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness; and all bonds or obligations in excess of such amount given by such corporation shall be void. That nothing in this act contained shall be so construed as to affect the validity of any act of any territorial legislature heretofore enacted, or of any obligation existing or contracted thereunder, nor to preclude the issuing of bonds already contracted for in pursuance of express provisions of law; nor to prevent any territorial legislature from legalizing the acts of any county, municipal corporation, or subdivision of any territory as to any bonds heretofore issued or contracted to be issued."

It is admitted by the agreed statement of facts that at the time the indebtedness was created no assessment had been made in Roger Mills county. It is further agreed that the first assessment for territorial and

county taxation was completed July 26, 1893, and that the aggregate amount of said assessment was $186,369.84. It further appears from the agreed statement of facts that the total amount of outstanding indebtedness of said county including the warrants in question, was only $3,564.83. It is conceded that the warrants in question were issued for a lawful, corporate purpose, and that the indebtedness was created for the purpose of furnishing books, records, and stationery for the use of the county officers, and for the purpose of conducting the ordinary business affairs of the county. It is also conceded that, if said act of congress is a prohibition on the powers of municipalities in the various territories to create any debt prior to the making of an assessment, then the warrants sued upon in this action are void, and the defendant in error cannot recover.

On the other hand, it is contended by the defendant in error that, notwithstanding the fact that no assessment had been made, said county had the power to create the indebtedness for a lawful purpose to carry on the ordinary affairs of local government, and issue warrants as an evidence thereof, to the extent of 4 per cent. of the taxable property therein.

This same question has been construed by this court in several well-considered cases. In the case of *Hoffman v. Commissioners*, 3 Okla. 325, 41 Pac. 566, which involved the validity of certain warrants issued by Pawnee county prior to an assessment, this court held that the act of July 30, 1886, has been modified, as to its effect in Pawnee county, prior to the first assessment for territorial and county taxes, by various acts of congress, so that said county may contract a debt not exceeding 4 per cent.

of the taxable property therein, to be ascertained by the first assessment. It was further decided by the court in that case that "an indebtedness created in Pawnee county within the provisions of the law, not in excess of 4 per cent. of the value of the taxable property therein for territorial and county taxes, prior to the first assessment, is a valid and binding obligation against said county, and all bonds or obligations in excess of such amount are void."

In the case of *Sauer v. McMurtry*, 4 Okla. 447, 46 Pac. 576, it was held that: "An indebtedness contracted or incurred for necessary and lawful purposes by any political or municipal corporation or any subdivision of the Territory of Oklahoma created and existing under and by virtue of the Organic Act and the laws of the Territory of Oklahoma, prior to the taking of the first assessment for the purpose of territorial and county taxation, is valid if issued within 4 per centum of the value of said taxable property as ascertained when said first assessment has been made, and warrants may be issued in evidence thereof."

The same rule was followed by this court in the case of *McMurtry v. Commissioners*, 6 Okla. 60, 55 Pac. 1069.

But it is contended by counsel for plaintiff in error, in an able and elaborate brief, that these decisions do not correctly state the law, and that this court should overrule them. It is contended that section 4 of the act of congress of July 30, 1886, has not been modified by the various acts of congress and the Organic Act of the Territory of Oklahoma, and that it is now, and has been since the adoption of the Organic Act, in full force and effect in this Territory. It is further contended that said act is a grant of power in relation to the creation of the

indebtedness by various municipalities in this Territory, and that it must be strictly construed; and that a valid indebtedness in the various municipalities of this Territory must be based upon the last assessment made for territorial and county purposes previous to the incurring of such indebtedness, and that, in the absence of such an assessment, there is a total want of power to create any indebtedness, within the provisions of said act.

This contention of the plaintiff in error is supported by the decision of this court in the case of *City of Guthrie v. New Vienna Bank*, 4 Okla. 194, 38 Pac. 4, which involved the validity of certain provisional debts created by various subdivisions of the city of Guthrie prior to the adoption of the Organic Act of Oklahoma, and before any provision had been made for the assessment of property for the purposes of taxation. In this case the court held that: "When there has been no assessment of property for the purposes of taxation, there is no power to incur indebtedness. Two factors enter into the power of cities to become indebted,—one, the assessment of property for territorial and county taxes previously made; the other, the aggregate amount of debts existing. If the first factor is absent, there is no authority to become indebted, and all debts incurred or imposed prior to such assessment are void."

We think that this proposition is untenable, and is not a proper construction of the act of congress. The manifest intention of congress was to limit the amount of indebtedness that may be created by the various municipalities in the territories of the United States, and not to prohibit them from incurring any indebtedness for the purpose of carrying on

the ordinary and necessary functions of local government. Congress no doubt presupposed that the various municipalities had the express or implied power to incur an indebtedness for the purpose of carrying on the ordinary affairs of local government. Manifestly, it was not the intention of congress to prohibit newly-organized counties or municipalities to incur indebtedness to the extent of 4 per cent. of the taxable property within such county or municipality. If the rule that, "when there has been no assessment of property for the purpose of taxation, there is no power to incur indebtedness," is true, then the act of congress must be construed to be a grant of power upon the municipalities to create indebtedness, and not a limitation thereon. It is true that in determining the limit of power—that is, the amount of indebtedness which a municipality may create—two factors are to be considered: (1) The amount of warrants or other obligations that have been issued; and (2) the amount of the assessed value of the property within the corporation for the purposes of taxation, to be ascertained by an assessment for territorial and county taxes previous to the incurring of such indebtedness. These two important factors are not the source of municipal power to incur indebtedness, but they are the two necessary factors by which the limitation is to be determined. Hence the ascertainment of the amount of taxable property within the corporation is the means of determining whether or not the federal limitation has been reached or passed, and it is not to be regarded as the source of power upon which any indebtedness can be created. The fact that a newly-organized county or municipal corporation has been unable to make an assessment does not warrant us in construing this act to

mean that there is a total want of power to create any indebtedness within such county or municipality, regardless of the amount of taxable property therein. And this contention of ours is sustained by the supreme court of Washington.

In the case of *Childs v. City of Anacortes,* 32 Pac. 217, the supreme court of Washington, in construing the constitutional limitation of that state involving the validity of certain warrants issued by the city of Anacortes prior to the making of a regular assessment, decided that the constitutional prohibition against the city's incurring any indebtedness in excess of $1\frac{1}{2}$ per cent. of the value of the taxable property within its limits is not a source of the city's power to incur indebtedness, but a limitation on such powers, and hence a newly-incorporated city has the power to incur indebtedness before the value of its taxable property is ascertained; the presumption being that it is acting properly in so doing. Mr. Justice Hoyt, in delivering the opinion of the court, said:

"It is contended on the part of the plaintiff that, until there has been an ascertainment of the value of the taxable property within the city, as shown by the regular assessment roll for city purposes, the city could incur no indebtedness; that the constitution prohibited the city from incurring an indebtedness in excess of $1\frac{1}{2}$ per cent. of the value of the taxable property so ascertained; and that, until such valuation was made to appear, there was nothing to show what indebtedness the city could legally incur, and that, for that reason, it could incur none at all. It is further contended in his behalf that the attempted ascertainment of the valuation of the taxable property in 1891, as above stated, was entirely ineffectual, for the purpose of establishing the data upon which the $1\frac{1}{2}$ per cent. of the indebtedness could be estimated. We are unable to agree with either of these

contentions. In our opinion, the provision of the constitution as to the amount of indebtedness which may be legally incurred by a city is a limitation upon the powers thereof, and not a grant of the right to incur indebtedness. Without this provision of the constitution, it would have been competent for the city, acting under authority from the legislature, to have incurred any amount of indebtedness. This being so, it follows that the provision of the constitution is a limitation, and not a grant. If, without the provision of the constitution, the city could incur, not only an indebtedness to the amount herein named, but also to any further amount within the limitations of its charter, it cannot, with any degree of consistency, be claimed that it must look to such provision as the source of its power to incur indebtedness. Such provision being, then, a simple limitation, it could have no effect upon the city until the data which gave life to such limitation had been first ascertained. It will be presumed, in the absence of a showing to the contrary, that the city, in incurring any indebtedness, acted properly, and the fact that it exceeded the limitation authorized by the constitution could never be made to appear until the valuation upon which the percentage named in such provision is to be estimated had been established as required by law."

In the case of *Hoffman v. Commissioners*, 3 Okla. 352, 41 Pac. 574, Mr. Justice Scott, speaking for the court, said:

"It may be further asked if, under this construction, there is any limit at all before an assessment is made? In answer to this we would be compelled to hold that, until an assessment has been made, section 4 can have no application whatever, (1) because no assessment has ever been made and (2) because, under the statute, there is no means of applying the 4 per cent. limitation, except upon the basis laid by the assessment. Four per cent. of the value of the taxable property prior to an assessment is an unknown quantity, and cannot be mathemat-

ically determined, and section 4 of said act can only be held to be wholly applicable or wholly inapplicable, prior to making an assessment. It would be a mistaken view to hold that section 4 makes reference to the last assessment as a period when the first indebtedness must be incurred, instead of regarding it as a basis for the ascertainment of the amount of indebtedness that may be created. This must be true, for in 1886, when the act was passed, there was no territory in existence where no assessment had been made therein, and said act was passed with special reference to existing territories and existing indebtedness, counties completely organized and equipped, and assessments of the taxable property made therein. There is a good reason in regarding section 4 inapplicable prior to an assessment, but not afterwards. After the assessment is made, this municipality comes clearly within the statute."

Applying these principles to the case at bar, we are clearly of the opinion that section 4 of said act does not become operative until the value of the taxable property within the county or municipality has been ascertained by an assessment for territorial and county taxes, for the reason that, until such an assessment has been made, there is no means of determining the value of the taxable property within the county or municipality, and hence there is no standard for ascertaining the limit of indebtedness that may be created within the purview of said act; that said act of congress presupposes an assessment, and, until the value of the taxable property within the corporation is ascertained, the law cannot become effective.

We therefore hold that the plaintiff in error, the board of county commissioners of Roger Mills county, had the power to incur a valid indebtedness, and issue warrants as an evidence thereof, prior to the making of an assess-

ment of the taxable property within said county for the purposes of territorial and county taxation, to meet the ordinary and necessary expenses of carrying on and conducting the functions of county government; and the incurring of such an indebtedness is not in violation of section 4 of the act of congress of July 30, 1886, which prescribes, among other things, that no county shall ever become indebted in excess of 4 per centum of the value of the taxable property therein, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness. For the reasons herein stated, we are of the opinion that the judgment of the district court is right, and it is therefore affirmed.

Burwell, J., not sitting; McAtee, J., and Irwin, J., concurring; Burford, C. J., dissenting.