JAMES L. HOLT *v.* D. L. CONKLING, TREASURER OF THE CITY AND COUNTY OF HONOLULU, TERRITORY OF HAWAII.

No. 1226.

APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON J. J. BANKS, JUDGE.

ARGUED FEBRUARY 4, 1920.          DECIDED FEBRUARY 14, 1920.

COKE, C. J., KEMP AND EDINGS, JJ.

MUNICIPAL CORPORATIONS—*debt limit.*

> The Organic Act provides in effect that the legislature may authorize loans by any municipal corporation for certain specified purposes but provides that the total of such indebtedness incurred in any one year shall not exceed 1% of the assessed value of its property. Held, that this is a limitation upon the power of the legislature to authorize the incurring of indebtedness as well as upon the municipality to incur it.

SAME—*same*.

> An act of the legislature transferring a water and sewer system to a city and requiring it to devote the revenues derived therefrom to the maintenance of said systems and the payment of interest and sinking fund on bonds issued by the Territory for the building of said systems and in the event of a deficiency in said revenue to make up said deficiency out of the general revenue of said city does not authorize nor require said city to incur an indebtedness.

ATTORNEY AND CLIENT—*county attorney—appearance for county officer*.

> A county attorney being elected by the people and his duties prescribed by statute is not subject to the orders of the board of supervisors and may in a proper case represent an officer of the county when sued in his official capacity although instructed not to do so by the board of supervisors.

### OPINION OF THE COURT BY KEMP, J.

This is a bill in equity for an injunction by Jas. L. Holt as a citizen and taxpayer of the City and County of Honolulu in his own behalf and in behalf of other taxpayers of said City and County against D. L. Conkling, treasurer of the City and County of Honolulu. The bill after setting forth the parties and the capacity in which they sue and are sued alleges that the defendant as such treasurer is paying to the treasurer of the Territory of Hawaii an enormous amount of money out of the funds owned and controlled by the City and County of Honolulu on January 1 and July 1 of each year for and on account of the Honolulu water and sewer systems contrary to law and the Organic Act in such cases made and provided; that the City and County of Honolulu has no title whatever in said Honolulu water and sewer systems; that the legislature of the Territory of Hawaii in passing such laws and providing that the City and County of Honolulu should pay to the Territory the bonds amounting to $1,494,611.33 for and on account of said Honolulu water and sewer systems went beyond its powers given under the Organic Act of

the Territory of Hawaii; that at that date, to wit, the 27th day of April, 1915, when the legislature passed an act making the City and County of Honolulu liable to the Territory in the sum of $1,494,611.33, the assessed value of the taxable property within the said City and County for the purpose of taxation for territorial and city and county purposes was $94,564,404; that the City and County of Honolulu under the terms of section 55 of the Organic Act of the Territory of Hawaii had only the power to borrow or incur indebtedness to the amount of 1% per year, to wit, to the amount of $945,-644.04; that such action by the treasurer of the City and County of Honolulu in utilizing the money of the City and County in paying for the interest and sinking fund on said enormous amount of $1,494,611.33 constitutes a wasting and squandering of the money of the taxpayers of this City and County and would cause the City and County great and irreparable injury and damage. The prayer is for an injunction against the said treasurer, his deputies, agents and employes, forbidding them and each of them from allowing the money of the City and County of Honolulu to be turned over to the treasurer of the Territory of Hawaii for the purpose of paying the interest and sinking fund aforesaid.

The matter came before the circuit judge on demurrer of the defendant to plaintiff's bill. The grounds of demurrer are in part as follows: "1. That said plaintiff in his said bill has not made or stated such a case as entitles him, in a court of equity, to any relief against this defendant as to matters contained and set forth in said bill or any of said matters. * * * 3. That said bill fails to disclose any right whatever in said plaintiff to bring this said suit. 4. That it does not appear from said bill that this plaintiff will suffer any irreparable damage or any damage or damages whatsoever in the prem-

ises.   5. That it does not appear from said bill what fund or funds the said treasurer utilizes 'in paying for the interest and sinking fund on said enormous sum of $1,494,611.33' and in that particular fails to show in what manner the said plaintiff suffered or will suffer any injury." Before the hearing on the demurrer the plaintiff filed an objection to the city and county attorney or his deputy appearing for the defendant in the suit.   The objection to the appearance of the city and county attorney for the defendant was overruled and the demurrer was sustained and the bill dismissed, the circuit judge holding in effect, as shown by his written decision, that the legislative enactments involved merely made the City and County of Honolulu the agent of the Territory to manage and control the water and sewer departments and did not have the effect of creating any indebtedness against the said City and County of Honolulu.   The other grounds of demurrer were not discussed.   The case is before us on an appeal from the order sustaining the demurrer and dismissing the bill.

Preliminary to a discussion of the questions presented it will be necessary to review the legislative acts by which the control of the water and sewer systems was transferred from the Territory to the City and County of Honolulu.

By Act 138 S. L. 1913 it was provided (Sec. 1) that not later than July 1, 1914, the water and sewer works and all moneys in the Honolulu water and sewer works funds shall be transferred from the Territory to the City and County of Honolulu or its successor; (Sec. 2) that after such transfer the operation, maintenance, extension and improvement of such works, the collection and expenditure of all moneys on account thereof and the exercise and performance of all powers and duties in relation thereto shall be by such officer as shall be desig-

nated by law or by the board of supervisors or other governing body, if any, of said City and County, or its successor, subject to the direction of said board or other body. "Upon such transfer said City and County or its successor as the case may be shall assume and become liable for the payment of all indebtedness incurred by the Territory for the operation, maintenance, construction, improvement and extension of said works and the interest thereon and all contracts and other obligations of every kind of the Territory incurred by reason of or in connection with said works to the same extent to which the Territory shall be liable therefor immediately preceding such transfer;" (Sec. 3) that all revenues derived from said works shall be paid into the treasury of said City and County or its successor and there held as a special fund for the following purposes, for which alone it shall be expended: (1) the operation and maintenance of said works; (2) interest on the bonds issued for the extension and improvement of said works; (3) the payment of said bonds, for which purpose there shall be set aside each year not less than such a sum that the aggregate of the sums so set aside with interest thereon compounded yearly at the rate of interest specified in the bonds would amount to the par value of the bonds at maturity, nor more than such a sum that the aggregate of such sums with such interest would amount to the par value of the bonds when they become redeemable; and (4) the extension and improvement of said works. "In whole or partial fulfillment of its obligations under subdivisions (2) and (3) of this section, said City and County or its successor shall after such transfer pay to the Territory on the interest dates of any such bonds as shall have been issued by the Territory, interest upon an amount equal to the par value of such bonds at the rate of interest specified in such bonds and also such

sum or sums each year during the term for which said bonds shall have been issued, whether refunded or not, that the aggregate of the sums so paid will, compounded annually at such rate of interest, equal at the expiration of such term, such par value, and may so pay to the Territory in any year any additional sum on account of the principal of said bonds, and when any such payment shall be made on account of the principal, the interest payable thereafter shall be reduced correspondingly, and when the aggregate sums so paid on account of the principal of said bonds shall equal the par value thereof, all obligations of said City and County in respect of said bonds, principal and interest, shall be deemed to have been discharged.  All amounts so paid to the Territory on account of principal, shall be credited to the territorial sinking fund and such credit when made shall be deemed to have been made under the provisions of the first paragraph of section 1 of Act 97 of the Laws of 1907;" section 4 requires the City and County to charge rates for all water and water power furnished except as otherwise required under contracts heretofore made; section 5 makes it the duty of the City and County to operate and maintain the said works and to pay to the Territory out of the general revenue of the City and County for the purposes stated in divisions 2 and 3 of section 3 deficiencies, if any, which may occur in said special fund; section 6 authorizes the board of supervisors or other governing body of the City and County to fix by ordinance rates for water and sewer privileges; sections 7 and 8 are not pertinent to the questions before us.  Section 3 of the above act became section 1861 of the Revised Laws of 1915.

Act 182 S. L. 1915 amended section 1861 R. L. 1915 and provides in substance that the revenues derived from said works shall be paid into the treasury of the

City and County and there be held in a special fund for the following purposes for which alone it shall be expended: (1) the operation and maintenance of said works; (2) interest at the rate of 4% per annum payable semi-annually on the sum of $1,494,611.33, which is the present outstanding bonded indebtedness incurred by the Territory for extensions and improvements on said works; (3) the payment of the principal of said amount of $1,494,611.33 for which purpose there shall be set aside each year for the term of 30 years after July 1, 1916, not less than such a sum that the aggregate of the sums so set aside with interest thereon at the rate of 4% per annum, compounded annually, would amount to the sum of $1,494,611.33; and (4) the extension of said works. In whole or partial fulfillment of its obligations under subdivisions 2 and 3 of this section said City and County is required to pay to the Territory on July 1 and January 1 of each year the amounts called for under said subdivisions 2 and 3. This amendment did not materially change the act of 1913. It merely declared the amount of the bonds theretofore issued by the Territory for such works and the rates of interest which they bear thereby making more certain the amount of money required of the City and County by the Territory semi-annually and fixed the dates of payment. In all other respects the act of 1913 remains unchanged.

So much of section 55 of the Organic Act of the Territory as is pertinent to this case follows: "Nor shall any debt be authorized to be contracted by or on behalf of the Territory, or any political or municipal corporation or subdivision thereof, except to pay the interest upon the existing indebtedness, to suppress insurrection, or to provide for the common defense, except that in addition to any indebtedness created for such pur-

poses the legislature may authorize loans by the Territory, or any such subdivision thereof, for the erection of penal, charitable, and educational institutions, and for public buildings, wharves, roads, harbor, and other public improvements, but the total of such indebtedness incurred in any one year by the Territory or any such subdivision shall not exceed one per centum of the assessed value of the property in the Territory or subdivision, respectively, as shown by the then last assessments for taxation, whether such assessments are made by the Territory or subdivision or subdivisions, and the total indebtedness of the Territory shall not at any time be extended beyond seven per centum of such assessed value of property in the Territory and the total indebtedness of any such subdivision shall not at any time be extended beyond three per centum of such assessed value of property in the subdivision, but nothing in this Act shall prevent the refunding of any indebtedness at any time; nor shall any such loan be made upon the credit of the public domain or any part thereof." This section is dealing with the powers of the territorial legislature. It declares that the legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States locally applicable and sets forth a number of things which the legislature shall and may do as well as a number of things which it shall not do and then follows the language above quoted. From this it seems clear that the legislature is empowered to authorize any subdivision of the Territory to incur indebtedness but is prohibited from authorizing any such subdivision to incur in any one year an indebtedness in excess of 1% of the assessed value of the property in such subdivision as shown by the then last assessment for taxation.

The question whether debt limit provisions apply to
obligations imposed upon municipalities by law as dis-
tinguished from those that are discretionary or volun-
tary has been a troublesome one and the authorities
have differed in their answers to the question. It has
been held by some state courts that the debt limit pro-
visions of their constitutions are confined to debts con-
tracted by the municipal authorities, in contracting
which they exercise discretionary powers, and do not
include enforced obligations imposed by statute and
which the municipal authorities are required by law to
pay and over which they exercise no control. The
Oregon cases which support this doctrine rest upon the
peculiar wording of the constitution of that State which
is in effect that the State or municipality, as the case
may be, shall not "create" any debts beyond the speci-
fied limit. Most of the state courts, however, which
have held that indebtedness incurred under mandate of
law is not within the debt limit provisions of their con-
stitutions, have been dealing with cases where the in-
debtedness was incurred for the purpose of maintaining
the political organization of the State or municipality
involved and have rested their decisions not upon the
letter of the restrictive clause in their constitutions but
upon the broad ground of necessity and the rule adopted
is that debt limit provisions apply only to those obliga-
tions that are entered into voluntarily, that is, to those
as to which the governing powers have some discretion.
But the constitution in every case where such has been
the holding in appropriate language prohibits the State
or municipality, as the case may be, from "incurring" or
"creating" any debt beyond a specified amount. The
following cases hold that the debt limit provisions of
the constitutions therein involved apply to all classes of
indebtedness where the constitution limit has been ex-

ceeded: *Dixon County* v. *Field,* 111 U. S. 83; *Lake County* v. *Rollins,* 130 U. S. 662; *Lake County* v. *Graham,* 130 U. S. 674; *Doon Township* v. *Cummins,* 142 U. S. 366; *City of Guthrie* v. *Bank,* 4 Okla. 194, 38 Pac. 4.

This construction we think is peculiarly applicable here where the Organic Act instead of being a mere inhibition against the municipality incurring an indebtedness beyond a specified amount has by its very terms placed a limitation upon the power of the legislature to authorize the incurring of such an indebtedness by any subdivision of the Territory in excess of a certain per centum of the value of the taxable property in such subdivision. If we are correct in our construction of this clause in our Organic Act and the act of the legislature in question created or authorized the municipality to incur a debt in excess of the amount authorized the fact that the debt was imposed upon the municipality by statute instead of being voluntarily contracted or incurred by it does not prevent it from coming within the limitation of the Organic Act.

This brings us then to a consideration of the question whether the legislation in question authorized the City and County of Honolulu to incur an indebtedness or imposed an indebtedness upon it. If it did the amount of the debt alleged in the complaint is sufficient to bring it within the restrictive clause of the Organic Act.

This is the question upon which the decision of the circuit judge sustaining the demurrer turned. After reviewing the history of the bonded debt of the Territory incurred for the creation and extension of the water and sewer systems of Honolulu and the history of the ownership and control of said systems as far as he was authorized to take judicial notice thereof, he held that

the acts in question did not have the effect of creating an indebtedness against the City and County of Honolulu. In this we think the circuit judge committed no error. The act of 1913 in transferring to the City and County of Honolulu the water and sewer systems authorized it to fix the rates to be charged for service and to collect the revenues arising therefrom. It also made it the duty of the City and County to apply said revenues to the purposes enumerated in said act and to make up out of the general revenue any deficiency which may occur in the special fund derived from the operation of said water and sewer systems. If the sums of money which it is alleged the treasurer of the City and County is paying to the Territory are being paid out of the special fund as directed by the act of 1913 the plaintiff as a taxpayer would not be injured thereby and therefore would have no right to complain. If it should be made to appear that a deficiency exists in the special fund (which has not been done in this case) and that the treasurer is about to make payments out of the general revenue of the City and County to make up such deficiency no infringement of the provision of the Organic Act would thereby be shown for the reason that the act under which payment would be made merely directs that such deficiency shall be made up out of the general revenue, that is, out of money then in the treasury of the municipality, and does not authorize or require the municipality to incur any indebtedness whatever for that purpose. "The control of the legislature over the revenues of a municipality derived from taxation is perhaps as absolute as its control of any other species of municipal property. * * * The legislature may also impose upon a municipality the performance of certain duties of a public nature, and may require it either to raise moneys for that purpose or to devote to

it revenues already on hand." 19 R. C. L. Sec. 73, p. 766.

Our conclusion on the foregoing question makes it unnecessary to discuss any other grounds of the demurrer, but the insistence with which the appellant has urged his contention that the city and county attorney should not be permitted to appear for the treasurer and the public nature of the question render it our duty, we think, to express our views thereon although we do not feel. called upon to enter into a general discussion of the question. We think that the appellant's contention that this suit is in effect a suit by the City and County of Honolulu against the Territory of Hawaii and that the city and county attorney in representing the defendant is in effect taking a case against the City and County of Honolulu is not sound. The plaintiff styles himself a taxpayer of the City and County of Honolulu and the defendant the treasurer thereof. The city and county attorney is elected by the people and his duties are prescribed by statute. He is therefore not subject to the orders of the board of supervisors except so far as the law has made it his duty to serve it. The board of supervisors has undertaken to instruct the city and county attorney not to appear for the treasurer in this case. Section 1736 R. L. 1915 makes it the duty of the city and county attorney to give when requested and without fee his opinion to the city and county officers on matters relating to the duties of their respective offices. The law does not specifically make it the duty of the city and county attorney to represent such officers in suits against them in their official capacity but certainly there is nothing inconsistent with his duties to the City and County, which he represents, in so appearing for one of the officers where matters upon which he has given advice are involved. The objection to his appear-

ance in this case for the treasurer was therefore properly overruled.

The order appealed from is affirmed.

*W. C. Achi* (*Achi and Achi on the brief*) for plaintiff.

*W. H. Heen,* City and County Attorney, and *R. A. Vitousck,* First Deputy City and County Attorney (also on the brief) for defendant.