E. E. BLACK, LIMITED, ET AL., *v.* D. L. CONKLING, TREASURER CITY AND COUNTY OF HONOLULU.

No. 2241.

ARGUED JANUARY 6, 7, 1936.   DECIDED MARCH 13, 1936.

COKE, C. J., BANKS, J., AND CIRCUIT JUDGE BROOKS IN PLACE OF PETERS, J., DISQUALIFIED.

OPINION OF THE COURT BY BANKS, J.

This is an appeal from a judgment rendered in a mandamus proceeding. In a former appeal the respondent was commanded by the judgment of the court below to do and perform certain specified acts. (For a complete understanding of the nature of the proceeding see *E. E. Black, Ltd., v. Conkling, ante,* p. 278.) The judgment from which the appeal was taken was affirmed in part and reversed in part and the court below was instructed to eliminate from its judgment certain portions thereof for the reason that they presented questions that had not then arisen and might never arise and therefore their adjudication was premature. After the remand of the case and in conformity with the opinion of this court the court below issued a peremptory writ and in obedience thereto the respondent sold all the lots that were subject to sale at public auction. As to some of the lots he was the highest bidder and therefore, as provided by statute, became the purchaser. Thereupon the petitioner made demand upon the respondent to pay out of the general fund the amount bid by him for the lots of which he had become the purchaser. This demand was refused and the petitioner filed a petition praying that a supplemental alternative writ of mandamus be issued to compel compliance with this demand. Simultaneously with the is-

suance of the writ the court, against the objection of the respondent, issued a restraining order prohibiting the respondent from making any payments out of the general funds of the city except those necessary for current expenses, unless permitted by the court. After a hearing upon the issues raised by the alternative writ and the respondent's answer thereto the court below rendered judgment in favor of the petitioner. From this judgment the present appeal is taken.

The respondent challenges the validity of the judgment appealed from on several grounds. The first contention is that it compels the treasurer to expend public moneys without a prior appropriation by the board of supervisors and without a warrant issued by the auditor. In support of this contention we are referred to the following sections of the Revised Laws of Hawaii 1925: Section 2178, which is as follows: "No board of supervisors or other board, committee, department, bureau, officer or employee of any county or city and county shall expend, or aid or participate in expending, during any period of time for any purpose, any sum in the absence of an appropriation for such purpose for such period, or any sum in excess of an appropriation, if any, for such purpose for such period, or incur, authorize or contract, or aid or participate in incurring, authorizing or contracting, during any fiscal year, liabilities or obligations, whether payable during such fiscal year or not, for any or all purposes, in excess of the amount of money available for such purposes for such county or city and county during such year, and any person who shall violate any provision of this section shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than one year, or by both such fine and imprisonment." Section 1801, which provides that "The city and county treasurer shall: * * * 6. Disburse city and county

moneys only on city and county warrants issued by the city and county auditor; 7. Disburse other moneys in the treasury on such warrants only as shall be based on orders or appropriations of the board of supervisors or upon an order of court or as otherwise provided for by law." Section 1791, which provides that "The auditor shall issue warrants on the city and county treasurer in favor of persons entitled thereto in payment of claims and demands chargeable against the city and county which have been legally examined, allowed and ordered paid by the board of supervisors. The auditor shall also issue warrants on the city and county treasurer for all debts and demands against the city and county when the amounts are fixed by law, or authorized by law to be allowed by some person or tribunal other than the board of supervisors."

These sections relate to the general disbursement of municipal funds and are intended to throw around them such safeguards as the legislature deemed necessary to their protection against unauthorized withdrawals and illegal use. So far as these disbursements are concerned they are forbidden unless certain formalities are complied with. Where, however, the legislature by express enactment imposes upon the treasurer the duty to make an expenditure out of the municipal treasury for a specific purpose the formalities which would be necessary under other circumstances are not required. This is precisely what was done by the enactment of section 1868, R. L. 1925, which was subsequent to the statutes relied upon by the respondent. This section requires the treasurer, if he becomes the purchaser of the property at the foreclosure sale, to pay for the same in cash out of the general funds of the city and county. Here is an unconditional legislative mandate to the treasurer. He is commanded to make such payments for the purpose specified in the statute and his authority to act is not made dependent on

an appropriation by the board of supervisors nor upon warrants issued by the auditor. This clearly indicates a legislative intent to except, from the procedure required by other statutes for the withdrawal of public funds, the payments commanded to be made out of such funds by section 1868.

In order to remove any doubt as to the soundness of this conclusion let it be supposed that the treasurer, acting without judicial compulsion, after having acquired the property by a foreclosure of the liens, had in the absence of an appropriation by the board of supervisors withdrawn from the treasury a sufficient sum to pay for the property he had purchased, could it be said that he had violated the provisions of section 2178, *supra,* and was therefore subject to the penalties provided by the Act? We think not. A complete defense would be that he had acted in compliance with the mandate of the legislature, which mandate the legislature unless restrained by the Organic Act had the power to issue.

The respondent's next two contentions are so closely related that they may be considered together. The first is that under section 55 of the Organic Act it was essential to the validity of the bonds in question that they receive the approval of the President of the United States and that this approval not having been obtained the bonds are a nullity. The bonds which are required by the Act to be approved by the President are those which create a municipal indebtedness. The second contention is that that portion of section 1868 requiring the treasurer to bid and, if he be the highest bidder, to pay for the property out of the general fund, places the bonds in the category of government bonds and therefore is in conflict with that portion of section 55 of the Organic Act as amended (44 U. S. Stat. L., pt. 2, p. 710), which provides that the total indebtedness of the City and County of Honolulu shall not

exceed five per cent of the assessed value of the property within the municipality.

Both of these contentions are disposed of in *Von Damm* v. *Conkling*, 23 Haw. 487. In that case plaintiff, a taxpayer, sought to enjoin the preparation, issuance, sale and delivery of certain improvement bonds which were under the statute then in force to be redeemed in the same manner and by the same procedure as are the bonds in the instant case. The court held that the bonds were not government bonds within the purview of the Organic Act and therefore the approval of the President of the United States was not required. In denying the injunction the court said (pp. 496-499) : "It is contended that the statute is in conflict with section 55 of the Organic Act of this Territory in that it provides for the incurring of indebtedness and issuance of bonds for public improvements by a municipal subdivision of the Territory without the approval of the President of the United States contrary to the inhibitions in that regard therein contained. The argument is that the bonds authorized to be issued by the statute are bonds of the City and County of Honolulu; that on being issued they would constitute indebtedness of the municipality; and that such bonds may not be issued, nor such indebtedness incurred, in view of section 55 of the Organic Act, without the approval of the President, and it is not intended to obtain such approval as to the indebtedness and bonds in question, nor does the statute require it. Bonds issued under the statute would be nominally the bonds of the municipality, but it does not follow that they must, in order to be valid, be approved by the President. The approval required by the Organic Act is to indebtedness incurred or loans made by the municipality and to the issuance of 'any bond or other instrument of any *such* indebtedness.' If, therefore, the indebtedness proposed would not be that of the munici-

pality the bonds to be issued as evidence of that indebtedness would not require the approval of the President, though, in form, they would be the bonds of the municipality. The courts have repeatedly held that the issuance of bonds or certificates payable only out of a specific fund raised by a special tax for public improvements does not constitute municipal indebtedness within the meaning of constitutional limitations upon such indebtedness. The reason for this is that the municipality merely acts as the trustee of the fund and the agent for its collection under the statute and disbursement under the contract. * * * But, it is argued, our statute goes further, and requires that, in the event of the nonpayment of assessments and the sale of lands because of the nonpayment, the municipality shall bid the amount due upon the assessments and may thereby incur liability as purchaser necessitating expenditures from the fund of its general revenues. Such liability is no different in principle from that which might arise under a statute not containing the provision referred to in the event of a deficiency caused by the failure of the municipal corporation to collect the assessments in full. And it is held that the possibility of such liability does not alter the rule. * * * Such a contingent future liability does not constitute indebtedness within the meaning of the constitutional provision. * * * In *Jacksonville R. Co.* v. *Jacksonville,* 114 Ill. 562, it was held that the making of a public improvement to be paid for out of a special fund to be raised principally by special assessment but partly by general taxation did not give rise to an indebtedness, and that no question as to the incurring of an indebtedness would be presented unless in the event of the city's failure to raise its share of the fund by a general tax it should attempt to borrow the amount. And in *Corey* v. *Ft. Dodge,* 133 Ia. 666, it was held that the letting of a contract for a public improvement, the cost of

which was to be paid by special assessment against abutting property, did not constitute an indebtedness though it was provided that any deficiency would be supplied from another fund raised by a general tax. In the case at bar it is clear that the municipality is not attempting to borrow money, and it will not be driven to the necessity of making a loan unless in the event of the nonpayment of assessments and the purchase of land within the improvement district it shall be without funds to pay therefor. What, if that situation should arise, would be the liability of the municipality, and what rights, if any, a taxpayer could assert need not be inquired into at this time. We are of the opinion that in proceeding with the proposed improvements under the statute the City and County of Honolulu will not be incurring any indebtedness or making a loan or a bond issue within the purview of the Organic Act. What has been said we think disposes of the contention that the improvement plan runs counter to the further clause in section 55 of the Organic Act which provides that no 'debt' shall be authorized or contracted by any municipal corporation except to pay interest upon existing indebtedness, to suppress insurrection, or to provide for the common defense. Neither the statute, nor the contract made under it, nor the proposed bond issue authorizes or contracts a debt of the municipality within the meaning of the Act."

It is true the court had before it the sole question of whether the approval of the President was necessary to the validity of the contemplated bonds. The reasons, however, for holding that such approval was not essential is a complete answer to the respondent's contention in the instant case that if the bonds now before us are required to be paid out of the general fund of the city and county it will increase the indebtedness of the municipality beyond the five per cent limit provided by section 55 of the Organic Act.

But the means by which the money is to be provided do not in the least increase the indebtedness of the city and county. The municipality is not required to borrow nor to incur any obligation in order to raise the money. (See also *Holt* v. *Conkling,* 25 Haw. 335, 345.) By the very terms of the statute the money is payable solely out of a fund which is already in the county's treasury. By the terms of the judgment such payment is required only when and if there remains in the fund a surplus over and above what is necessary to meet the current expenses of the municipality, thus relieving it of the necessity of raising money with which to defray its operating expenses.

It is next contended by respondent that section 1868 in so far as it provides for the purchase of delinquent properties and payment therefor out of the general fund is in conflict with the following portion of section 55 of the Organic Act: "Nor shall the government of the Territory of Hawaii, or any political or municipal corporation or subdivision of the Territory, make any subscription to the capital stock of any incorporated company, or in any manner lend its credit for the use thereof." Section 1851, chapter 119, R. L. 1925, under which the bonds were issued, authorizes the board to "establish, open, extend, widen or alter any street, alley, or other highway." This authorization was intended for a public purpose. It cannot be denied that the improvement of the St. Louis Heights district was for the benefit of the whole community. The roads which were established, constructed and opened became and are now public highways over which the City and County of Honolulu has absolute control. Naturally the adjacent and abutting landowners derived a special benefit from this improvement and it was for this reason that they were assessed for its construction. But the fact that an improvement, which is of a public nature and therefore beneficial to the general public, is also of

special benefit to a limited number residing within the improvement district does not render the bonds issued by the municipality for the improvement a lending of its credit.

This view is sustained by all the authorities on the subject. In *Imboden* v. *City of Bristol,* 179, S. W. (Tenn.) 147, a bill was filed by residents and taxpayers of the city of Bristol to enjoin the issuance of bonds for a street improvement work. The improvement statute of Tennessee provided that special assessments might be imposed for local improvements and that two-thirds of the cost should be borne by the abutting owners and one-third by the city. It further authorized the city to issue bonds on the two-thirds charged to the landowners and that the city should be repaid by assessments on the land benefited by the improvements. Section 29, Art. 2, of the Tennessee constitution provides in part as follows: "But the credit of no county, city or town shall be given or loaned to or in aid of any person, * * * association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election." It was contended by the residents and taxpayers that the issuance of bonds for the street improvements was a giving or lending of the city's credit and therefore violative of the quoted section of the constitution. In rejecting that contention the supreme court of Tennessee said (pp. 147, 148): "Although the improvement of a particular street may confer a peculiar benefit upon the property owners along that street—so peculiar, indeed, as to justify a special assessment upon them—the improvement is none the less a public improvement. In this case the expenditure is to be made on the city's own easement, its street, of which it had, and retains, control, and of which all its citizens have the benefit. * * * The improvement of the city's streets

is an improvement of a public nature, an improvement of the city's own property, the enjoyment of which is not confined to adjacent property owners. That adjacent owners derive special advantage therefrom sufficient to justify the levy of a special assessment upon them does not alter the case. The work is still of a public character, and expenditures for the same are expenditures for a corporation purpose." (See also *Stanley* v. *Jeffries*, 284 Pac. [Mont.] 134; *Stege* v. *City of Richmond*, 228 Pac. [Cal.] 461; *American Co.* v. *City of Lakeport* [Cal.], 26 Pac. [2d] 490; *City of Pasadena* v. *Chamberlain* [Cal.], 36 Pac. [2d] 387.)

*Commissioners* v. *Boring*, 175 N. C. 105, cited by the respondent, is not a parallel case. There three townships in Bladen County voted for the issuance of bonds for road improvements in the townships. The county commissioners (the plaintiffs) sold these bonds to the defendant and in accordance with the North Carolina statute offered to endorse them on behalf of the county. The defendant refused to carry out his contract of purchase on the ground that the county commissioners were without power to guarantee the bonds on behalf of the county because the state constitution forbade any county, city, town, or other municipal corporation from contracting a debt, pledging its faith or loaning its credit unless by a vote of the majority of qualified voters therein. It is true the court employed the language quoted by the respondent in answering the argument that the county might never have to pay for the bonds, but that was not the basis of its decision. The reason for holding that the county could not guarantee the bonds was that the benefit would be solely to the townships and for which the voters of the whole county might have to pay and therefore one district would be taxed for the exclusive benefit of another district. Said the supreme court of North Carolina (p. 109): "It

is provided in Constitution, Art. VII, sec. 7, that no county, city or town, or other municipal corporation, shall contract a debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same, except for the necessary expenses thereof, unless by a vote of a majority of the qualified voters therein. While the construction of public roads is a necessary expense, as has been so often decided, we held in the *Lacy* case that the establishment of a road system confined to a township or road district, and under its control and for its special benefit, is not a necessary county expense; and even if sanctioned by a majority of the voters of the township or district at an election, the legislature cannot create any obligation of the county which must be paid by taxation of the entire county when the voters in the latter have not consented thereto, and there is not even a method provided for their doing so.".

The last contention of the respondent is that the court below was without jurisdiction to issue a restraining order in a mandamus case. As we have already seen, when the court issued the supplemental alternative writ it also issued an order directed to the respondent prohibiting him from "making any payments out of the city and county funds depleting the existing, anticipated, unappropriated surplus, except such that may be essential for the necessary current expenses of the city and county, except upon application to, and order of, this court, until the further order of this court." The judgment which was issued following the hearing on the supplemental writ, after reciting the findings of the court, is as follows: "Therefore, it is considered, ordered and adjudged, that said alternative writ of mandamus heretofore issued in this cause be made perpetual, and the clerk of this court is hereby authorized and directed to issue a peremptory writ of mandamus commanding the said D. L. Conkling as treasurer

of said City and County of Honolulu, respondent above named, forthwith to proceed to pay for the lots bid in as aforesaid out of the general funds of the City and County of Honolulu, not required and appropriated for its ordinary and current expenses, and in case such funds be insufficient, to thereafter each year use such general funds, not required and appropriated for the ordinary and current expenses of said city and county, as may from time to time become available, the moneys so paid to be deposited in the special fund for the St. Louis Heights Improvement District No. 29 to be utilized thereafter as provided by law. It is hereby further ordered and adjudged that as soon as practicable after the close of the year 1935, and after each succeeding year or fiscal period thereafter until the lots purchased aforesaid have been fully paid for, respondent shall make a return to this court showing that he has faithfully complied with the provisions of said peremptory writ. It is hereby further ordered and adjudged that petitioners may from time to time apply to this court for such further and supplementary relief as the circumstances and the law may entitle them to."

Every act which the court thought under its findings should be performed by the respondent must be presumed to have been embodied in its final judgment. That judgment, which is entirely mandatory in its provisions, is the chart and compass by which he must steer his course. The injunctive order of which he complains was evidently intended to serve the temporary purpose of maintaining the *status quo* of the general fund until the case should be determined by the court. This was done by the entry of a final judgment in which no reference is made to the order. The order having no further office to perform became *functus officio*. For this reason whether it was properly or improperly issued need not be considered.

It is true that the judgment makes the supplemental alternative writ of mandamus permanent and that by one of the terms of the latter the respondent is commanded to "refrain from making any payments out of the general funds of the city and county that deplete the anticipated, unappropriated surplus of said city and county for the year 1935, except for its necessary current expenses or upon application to this court." But inasmuch as the respondent made no objection to the supplemental alternative writ on the ground that injunctive relief cannot be granted in a mandamus proceeding (which question we do not decide) we need not consider whether its inclusion was improper.

Judgment appealed from affirmed.

*A. G. M. Robertson* (*Robertson & Castle* on the briefs) for certain petitioners.

*S. B. Kemp* (*Kemp & Stainback* on the brief) for petitioner Liberty Bank.

*W. C. Tsukiyama,* City and County Attorney (also on the briefs), for respondent.